THE TEXAS & PACIFIC RAILWAY COMPANY V. MRS.
MAGGIE ROBERTSON ET AL.

82  657
83  682

No. 3138.

1. **Res Gestæ.** — Deceased was heard to cry out by a witness fifty or sixty yards distant. The witness at once ran to the deceased, who then detailed the manner in which he received his injury. This was competent testimony under the repeated decisions of this court.

2. **Allegations of Facts Constituting Negligence—Charge.**—It was alleged that the death of the husband, etc., of the plaintiff was caused by the negligence of the railway company, in that the brakebeam was defective and the rails of the frog switch were out of order, by which deceased was tripped up and ran over while uncoupling a car from the tender of the engine. There was evidence (but conflicting) that the brakebeam was several inches too low, and that the nails and spikes at the frog were not driven down but protruded three or four inches. *Held:*

1. The court properly refused a charge withdrawing consideration of the brakebeam from the jury; its condition was matter of fact for the jury.

2. It was proper to consider the condition of the brakebar taken in connection with the testimony to the condition of the switch—the danger of the situation.

3. That deceased had attempted to uncouple while the train was moving was not of itself evidence of negligence on his part contributing to his death, it being shown that it was a common practice.

3. **Incompetent Employes.**—It was shown that the person to whom the railway company confided the duty to keep the track in order was incompetent, and it was not shown that the deceased knew of its defective condition at the time and place of the injury. Liability would result from these facts.

4. **Verdict Not Excessive.** — Action by widow and children and mother of a brakeman, 40 years old, receiving $75 per month. The jury gave $10,000, dividing it among the parties. This was not excessive.

5. **"Surviving Child" — Unborn.** — An unborn child is included in the term "surviving child," and is entitled to participate in the benefit of a judgment recovered for the negligent killing of its parent.

APPEAL from Marion. Tried below before Hon. E. W. TERHUNE.

This is an appeal from a judgment for $10,000, recovered by the widow, children, and mother of a brakeman killed in the employ of the appellant. The deceased was killed while attempting in the night to uncouple in a moving train a car from the tender of the engine drawing the train.

The facts are set out in the opinion.

*F. H. Prendergast*, for appellant.—1. The court erred in allowing witness Walker to testify to what deceased said was the cause of his getting hurt. The same was hearsay, and no part of the res gestæ. Commonwealth v. McPike, 3 Cush., 184; Pilkinton v. Railway, 70 Texas, 226; McGowen v. McGowen, 52 Texas, 664; Railway v. Crowder, 70 Texas, 225; Ins. Co. v. Moseley, 8 Wall., 418; Lund v. Tingsborough, 9 Cush., 41.

2. The court erred in refusing to charge the jury that the evidence was not sufficient to justify a finding for plaintiff on account of a defective brakebeam. Railway v. Wisenor, 66 Texas, 675; Railway v. Overheiser, 76 Texas, 437.

3. Besides, the evidence showed that T. B. Robertson went in between the engine tank and a car to uncouple them while the cars were moving four miles per hour, at night, at a point where the sidetrack, guard rails, and switches and frogs of the switch were, and that he stumbled and fell, without any fault of defendant.

4. The court erred in not granting a new trial, because the verdict is excessive in amount.

5. The court erred in allowing any recovery in favor of the minor T. B. Robertson, plaintiff, because he was born three months after the death of the deceased T. B. Robertson, who was his father; and the said plaintiff T. B. Robertson is not a survivor of his father T. B. Robertson, the deceased. Railway v. Le Gierse, 51 Texas, 199; Railway v. Baker, 57 Texas, 423; Railway v. Bradley, 45 Texas, 176; Railway v. Smith (Pa.), 38 Am. and Eng. Ry. Cases, 199; Rev. Stats., arts. 3202, 2905, 2903; Burrill's Law Dic., word, "Survivor;" Bouvier's Law Dic., Id.; Worcester's Dic., Id.

*P. H. Rowell* and *C. A. Culberson*, for appellees.—1. The testimony of Walker was admissible as res gestæ. McGowen v. McGowen, 52 Texas, 657; City of Galveston v. Barbour, 62 Texas, 176; Pilkinton v. Railway, 70 Texas, 231; Railway v. Buck, 19 N. E. Rep., 453; Leahey v. Railway, 97 Mo., 165; Frink v. Coe, 61 Am. Dec., 141; Lane v. Bryant, 69 Am. Dec., 282; Black's Pr. and Pl. in Acc. Cases, secs. 25, 26.

2. There was testimony to defective brakebeam, and the court properly refused to withdraw it from the jury. Supreme Council v. Anderson, 61 Texas, 301; Brown v. Griffin, 71 Texas, 659; Railway v. Overheiser, 76 Texas, 437; 2 Thomp. on Trials, secs. 1663, 1665, 1666; 2 Thomp. on Neg., p. 1239, sec. 13; Buesching v. Gaslight Co., 73 Mo., 219; Whitney v. Clifford, 57 Wis., 156.

3. The testimony supported the verdict. Railway v. Overheiser, 76 Texas, 437; Black's Pr. and Pl. in Acc. Cases, secs. 5, 6; Wedgewood v. Railway, 44 Wis., 44; Plank v. Railway, 60 N. Y., 607; Hart v. Railway, 80 N. Y., 622; Snow v. Railway, 8 Allen, 441; Hullehan v. Railway, 31 Am. and Eng. Ry. Cases, 322; Beams v. Railway, 58 Iowa, 150; Baird v. Railway, 61 Iowa, 359; King v. Railway, 14 Fed. Rep., 277.

4. The verdict was not excessive. Railway v. Kirk, 62 Texas, 227; Railway v. Ormond, 64 Texas, 485; Railway v. Smith, 65 Texas, 167; Railway v. Lehmberg, 75 Texas, 61.

5. Touching the rights of the unborn child, on the merits the position of appellant is unsound. The statute provides, that the "action

shall be for the sole and exclusive benefit of the surviving husband, wife, children, and parents" of the deceased.    Webster defines surviving as "remaining alive; yet living."    The child at the time of his father's death, according to all medical authority, and the experience of mankind, was alive, though not delivered from the womb.    Taylor's Med. Jur., 355, 356.

The statute does not require that the child shall be born.    Not only its purpose, but its language and plain meaning is attained when the child lives after the father dies.    A child in ventre sa mere is considered as born for the purposes of all civil rights and beneficial purposes. The law has always so declared, and, in the language of Judge Sharswood, it is "according to every principle of justice and natural feeling."    1 Shars. Bl., 169, book 2, note.

"An infant in ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes.    It is capable of having a legacy, or a surrender of a copyhold estate, made to it."    1 Black. Com., 130.

"Every legitimate infant in ventre sa mere is considered as born for all beneficial purposes.    Coke's Lit., 36; 1 P. Wms., 329.    Thus, if lands be devised to B for life, remainder to such child or children living at the time of his decease, a posthumous child will take equally with those who were born before B's death."    Doe v. Clark, 2 Hen. Bl., 399; 1 Shars. Black., 12 ed., 128.

A posthumous child will be considered as born at the time a particular estate or right became vested.    Thelluson v. Woodford, 4 Vesey, 342; Verdet v. Hopegood, 1 P. Wms., 487; Thelluson v. Woodford, 11 Vesey, 139; Bassett v. Bassett, 3 Atk., 203.

The beneficiaries under Lord Campbell's Act were the "wife, husband, parent, and child."    Under that act it was held, which is conclusive of this case, that a child in ventre sa mere was entitled to damages for the death of its father.    The George and Richard, L. R., 3 Ecc. and Ad., 466, cited in 2 Thomp. on Neg., p. 1277, and note 1.

Our statute, modeled from that of England, intended to provide sustenance for children wrongfully deprived of paternal care, was framed in the full light of this long established principle, and to deny the claim of the child most dependent would be destructive of the higher and better purpose of the law.

STAYTON, CHIEF JUSTICE. — T. B. Robertson having been killed while in the employment of appellant as a brakeman, this action was brought by his mother, wife, and children to recover damages resulting from his death, which it is alleged resulted from the negligence of the railway company.    The evidence other than the declarations of the deceased, hereafter to be referred to, showed that he was injured while attempting to uncouple moving cars.

A witness was permitted to state that he "was about fifty or sixty yards from Robertson when he was hurt, and I heard Robertson halloo, and I ran immediately to him and reached him before they got him out from under the tender. He was fully conscious. I was about the first to reach him, and he then and there stated that he was uncoupling the car from the engine, and just as he pulled the pin he stumbled, and the brakebeam caught his foot and threw him across the rail."

This evidence was objected to, on the ground that it was hearsay and not part of the res gestæ; but the objection was overruled, and this ruling is assigned as error.

It may be that the admission of such evidence is hard to reconcile with the principles of evidence, and could we deem it an open question the writer would be inclined to reject it; but the great weight of American authority is in favor of its reception, and the former decisions of this court are on the same line. The question was considered at the present term, and such evidence held admissible in the case of Railway v. Anderson, wherein authorities bearing on the question are cited. The circumstances under which the declarations in question were made were such as to almost preclude the belief that any self-serving purpose prompted them, and we can not hold that it was error to receive the evidence.

There was evidence tending to show that the brakebeam was not in good order, and that it came nearer to the rails than it should have been, but there was some conflict as to this.

The averments of negligence on the part of the railway company on which plaintiffs based their right to recover contained the following: "That while the said T. B. Robertson was, in the regular and proper and careful discharge of his duties, uncoupling a car from the tender of the engine pulling the freight train upon which said Robertson was employed as aforesaid, at night, on said January 12, 1889, and while said Robertson was passing carefully from between said tender and said car, the spikes in the frog brace, which were then and there out of order, dangerous, and unsafe, tripped the said Robertson, and the brakebeam of said tender, which was old, out of order, and dangerous and unsafe, caught the foot of said Robertson and threw him down and held him so that the wheels of said tender and car passed over the body of said Robertson and cut off both of his legs and cruelly killed him as aforesaid." It was further alleged, that his death was caused by the negligence of the appellant and its employes, in that "said cars, tender, track, roadbed, frog, switch, frog brace, brakebeam of the tender, and the guide rails at the place where said injuries were inflicted upon said Robertson were each and all old, out of order, dangerous, and unsafe; that the section foreman of said section at that time was incompetent and unfit; that all these things caused and contributed to said

injuries; that the unsafe and dangerous condition thereof was wholly unknown to said Robertson; that the incompetency and unfitness of said foreman were unknown to said Robertson; and that defendant and its agents and employes had full knowledge of all these things, and might have known the same by the exercise of legal and proper care."

Lee Whitworth, who was by occupation a track foreman, testified: "Shortly after Robertson was injured I examined the part of the track where he was injured. There were there sidetracks, frogs, and frog braces and guide rails. I found the spikes and frog bolts in an unsafe condition by the spikes being up from the rails and frog bolts extending out too far from the frog, making it unsafe for trainmen and liable to trip and throw them. * * * I examined the track a short time after the accident. I made the examination to find out the condition of the track, as he, deceased, had said he stumbled on something. He said this just after the injury."

T. R. Walker, after stating that he was the first to reach deceased when under the tender, said: "Early the next morning I went up to where Robertson was injured, to examine the track to see what made him stumble. I found blood and small pieces of his clothing and bones on the track where he was run over, and right at that place was a frog brace, spikes, and guide rails; the spikes around and in the frog brace were not driven over half up, being about two and three inches above the tie, and two of the bolts connecting the rails projected about three inches from the top, or not inside the brace between the rails, rendering it very unsafe for employes on the track, and liable to cause any one to stumble and fall."

The evidence thus standing, defendant requested the court to give the following charge: "The jury are charged that there is no sufficient evidence to justify them in finding for plaintiff on the ground that the brakebeam was defective. You will therefore not consider any effect the brakebeam may have had."

The refusal to give this charge is assigned as error, but we are of opinion that the court did not err in this. It would not have been proper for the court to pass upon the question of fact and to withdraw it from the consideration of the jury when there was evidence tending to show that the brakebeam was not in proper condition; and if this were not true, in view of the evidence showing such defects in the construction of the road at the place the accident occurred as were shown, these being such as were likely to cause the brakeman to stumble and fall, it would have been improper to withdraw from the jury the consideration of any defects that with others brought about the injury, even if it had been shown that the particular defect would not alone have caused it. Whether the brakebeam was defective, and whether this alone or with other defects was the cause of the injury, was for the jury.

There is but one objection urged to the charge given by the court, and that is, that "the court erred in the seventh section of the charge, in allowing the jury to find for plaintiff on account of a defective brakebeam, because there was no evidence that the brakebeam was defective, nor that the defect, if any, caused the injury."

The evidence bearing on the condition, so far as necessary to state it, is as follows:

Hunnicutt, who testified for appellee, said: "I was in the employ of defendant on January 12, 1889, and my duty was to make and repair brakebeams to engines and tenders. The standard height of a brakebeam is nine inches from the top of the rail when new and empty, but when the tender is loaded it will come down to seven or seven and one-half inches. * * * When they get below seven inches high they are repaired."

Walker testified, that "since my employment with said company (appellant) I have measured a good many brakebeams to engine tenders, and have always found same to measure not less than nine inches nor any more than fourteen inches high above the rails."

The witness Kelley, who testified for appellant, on cross-examination said: "We measured the brakebeam about two hours after Robertson was hurt. We measured from the top of the rail to the bottom of the brakebeam with a stick and I measured the stick with my hands, and we decided from that, that it was about five inches from top of rail to bottom of brakebeam."

Fuller, the engineer, testified, that at the time of the injury the brakebeam was seven and one-half inches above the rail.

The charge of the court properly permitted the jury to consider whether or not the brakebeam was defective and whether that caused the injury, for there was evidence tending to show that it was defective, and that this defect may have caused or contributed to the injury.

It is urged that "the court erred in overruling motion for a new trial, because the evidence did not show what it was that caused T. B. Robertson to fall. The evidence did not show any negligence on the part of the defendant that caused the injury to Robertson." And further, that "the court erred in not granting a new trial, because the verdict is contrary to the evidence, in this: The evidence showed that T. B. Robertson went in between the engine tank and a car to uncouple them while the cars were moving four miles per hour, at night, at a point where the sidetrack, guard rails, and switches and frogs of the switch were, and that he stumbled and fell, without any fault of defendant."

The evidence showed that the deceased was uncoupling a car; that he entered between the cars while in motion for that purpose; that the track was in bad condition at the place in respects which were likely to bring about just such a result; even if we discard all evidence tending to show that the brakebeam was not in proper condition, and look-

ing to the entire evidence, it can not be said that there was not sufficient evidence to show how the injury occurred and what caused it. The court instructed the jury as to the degree of care it was incumbent on deceased to have used to entitle appellees to recover, and the evidence showed that it was usual and often necessary for brakemen to enter between moving cars for the purpose of uncoupling them, and it does not appear that this might not have been done without injury but for the defects pointed out by the witness, which were such as were likely to cause a brakeman to stumble and fall. It is shown that the person to whom the company confided the duty to keep the track in order was incompetent, and it was not shown that deceased knew of its defective condition when and where he attempted to uncouple cars and lost his life.

It can not be said that the evidence shows a case in which the railway company was free from negligence, which was probably the direct cause of the accident; nor can it be said that the facts show a case in which, as matter of law, deceased was guilty of such negligence as would have precluded a recovery by him had he lived; and on all these questions the jury passed under a charge not complained of, and with evidence upon which they might reasonably find that the injury resulted from a cause that would fix liability on appellant; and we can not reverse the judgment on the ground that a new trial should have been granted on the grounds referred to.

It is claimed that the verdict was excessive, and that for this reason a new trial should have been granted. The verdict was for $10,000. Deceased was a man 40 years of age, in good health, an experienced railway man, who had held higher positions in such service in another State than he was holding at the time of the injury. He was receiving only $75 per month as brakeman when injured; but, with capacity to fill higher positions in railway service, this can not be made the measure of appellees' loss, for, if competent and faithful, it might be reasonably expected that he would have been promoted to higher service with increased compensation.

One of the plaintiffs was unborn at the time of the death of the father, and it is contended that under the statute this child, to whom $2000 was awarded, was not entitled to recover, because not within the meaning of the law a "surviving child." Looking to the purpose of the law, there can be no question of the right of such a child to recover, and so it was held under the English act, known as Lord Campbell's Act, and so it has been held in this State. Nelson v. Railway, 78 Texas, 621; Railway v. Lehmberg, 75 Texas, 67.

Finding no error, the judgment will be affirmed.

*Affirmed.*

Delivered December 22, 1891.