ATCHISON, TOPEKA AND SANTA FE RAILWAY COM-
PANY v. PATRICK LOGAN *et al.*

No. 12,778.    (70 Pac. 878.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Employee—Ante-mortem Statement.*
A railway switchman, in attempting to uncouple two freight-cars
while they were in motion, fell between them, receiving injuries
which resulted in death soon thereafter. After he was removed
from under the cars he told the foreman in charge of the train to
call some one; that he wanted to make a statement. The foreman
signaled the engineer, who moved his engine toward the place
where the switchman was lying, got down, and arrived at his side
about five minutes after the accident. In response to a question
as to what the switchman wanted, the latter narrated briefly how
the accident happened. *Held*, that the declarations were not
a part of the *res gestæ*, and inadmissible.

2. ——— *Statements Included within the Res Gestæ.* A spon-
taneous utterance, an ejaculation, an intuitive explanation of a
hurt, generated by pain or excitement, are properly included
within the *res gestæ;* but a statement made after apparent de-
lay, showing calculation, and a reflective, thoughtful purpose to
postpone the making of it until witnesses are present to attest the
words spoken, removes the narrative to the category of a self-
serving declaration, and renders it inadmissible in evidence.

Error from Leavenworth district court; LOUIS A.
MYERS, judge. Opinion filed December 6, 1902. Re-
versed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*John H. Atwood,* and *J. C. Petherbridge,* for defend-
ants in error.

The opinion of the court was delivered by

SMITH, J.: This was an action brought by Patrick
and Eliza Logan, as parents and next of kin, to re-
cover damages by reason of the death of their son,
William T. Logan, who was killed by the cars of the

Atchison, Topeka & Santa Fe Railway Company, in the company's yards at Arkansas City. They had judgment in the court below.

The deceased was a switchman. He went between a coal-car and an oil-tank car to uncouple them while they were in motion. Standing on a brake-beam, and while the cars were being pushed by a switch-engine at a speed of about six miles per hour, one Cooper, foreman of the switching crew, without receiving any signal from Logan, motioned to the engineer to stop. This was done, and a few moments later it was discovered that Logan had been run over. Four or five minutes after the injury, Logan made a statement in the presence of Cooper and the engineer. He said that "he tried to raise the lever on this side, and he could not, and when he went in between them to get to the one on the opposite side, he was jerked off." This testimony was offered on behalf of plaintiff below, and received over the objection of the railway company. It was material.

It is necessary, to a proper understanding of the facts which led up to this statement of the deceased, to set out the testimony of the witness Cooper, who detailed them :

"Ques. Then, I understand you to say that, immediately after the train had passed over him, you and Mr. Dowhen pulled him out from under the cars? Ans. Yes, sir.

"Q. What did you do with him? A. Laid him on the ground near by.

"Q. Did the deceased, Logan, make any statement at that time, as to how the injuries occurred? A. He did.

"Q. How soon after he received his injuries did he make this statement? A. About four or five minutes.

"Q. And where was it made? A. He was lying there on the ground at the time.

"Q. Was he in plain view of the car that had run over him? A. Yes, sir.

"Q. About how many feet away from the place where he was hurt? A. About two or three feet.

"Q. Who was present? A. No one but myself, at the time he said he wanted to make the statement.

"Q. Who was present at the time he made the statement? A. Engineer, Mr. Edward German.

"Q. Did Mr. Logan die soon after the statement was made? A. Yes, sir.

"Q. How soon afterwards? A. I do not know the exact moment he died ; about thirty minutes.

"Q. Now, you may state what he said relative to how he received the injuries. A. He told me to call some one, that he wanted to make a statement, and I backed Mr. German down over the switch with the string of cars, and gave him the signal to come ahead, to get him up closer to me, so I could call him ; and I called Mr. German, and he came down and asked Mr. Logan what it was he wanted, and Mr. Logan said he wanted to say that he tried to raise the lever on this side, and he could not, and when he went in between them to get to the one on the opposite side, he was jerked off."

The statement of Logan was received in evidence as a part of the *res gestæ*, and its admissibility is defended by counsel for defendant in error on that ground. Counsel on the other side contend that the statements of the injured person, made five minutes after the accident, were but the narrative of a past transaction not accompanying the principal fact, and hence not receivable in evidence.

There is much conflict in the authorities respecting the admissibility of such declarations, but we are not called on by the circumstances of this case to decide the question on the objection made to the evidence by the railway company as above stated. Here the ac-

count given by the deceased respecting the manner of his injury was preceded by much deliberation. When lying on the ground, with no other person than Mr. Cooper present, he said he desired to make a statement. He requested Cooper to call some one, and delayed making any communication until Mr. German, the engineer, backed his engine down over a switch and then came forward near the place where he (Logan) was lying. Upon the approach of the engineer, the latter asked him what he had to say. His statement was then made in response to this inquiry.

The element of spontaneity is the controlling feature in the adjudged cases holding declarations made immediately after an injury of this kind to be admissible. Lapse of time is important only as affecting the spontaneity of the words uttered. An ejaculation, an intuitive explanation of a hurt, generated by feelings of excitement, are properly included within the *res gestæ*, but a statement made after apparent deliberation, indicative of ruminating delay on the part of the narrator over the matter narrated, removes what is said to the catagory of self-serving declarations which are inadmissible.

In *Travelers' Ins. Co. v. Sheppard*, 85 Ga. 751, 776, 12 S. E. 18, 27, it was said :

"That they [the words spoken] shall be or appear to be spontaneous is indispensable, and it is for this reason alone that they are required to be speedy. There must be no fair opportunity for the will of the speaker to mold or modify them. His will must have become and remained dormant, so far as any deliberation in concocting matter for speech or selecting words is concerned. . . . His declarations must be the utterance of human nature, of the *genus homo*, rather than of the individual. Only an oath can guarantee individual veracity. . . . True, the verbal

deliverance in each instance is that of an individual person. But if the state of his mind be such that his individuality is for the time being suppressed and silenced, so that he utters the voice of humanity rather than of himself, what he says is regarded by the law as in some degree trustworthy.''

Logan said nothing about the manner of his injury to Cooper and Dowhen, who pulled him from under the cars. This may be explained, however, by considering the pain he was suffering at the time. Afterward, when Cooper alone was present, he requested that another person be called to hear his statement. He was evidently at that time as physically able to say to Cooper what he afterward said to Cooper and German. The desire that more than one person should hear his explanation of the cause of his injury, and holding it back until two were present, showed a calculating mind—a preliminary pondering over the subject—a reflective, thoughtful purpose to make testimony favorable to himself, postponed with method until the number of witnesses desired could attest his words. There was wholly lacking in the circumstances of the declaration that which showed an "utterance of human nature rather than the individual." (*Texas & Pacific Ry. Co. v. Robertson*, 82 Tex. 657, 17 S. W. 1041; *McGowen v. McGowen*, 52 id. 657; *Pilkinton v. Railway*, 70 id. 226, 7 S. W. 805; *Kennedy v. Roch. C. & B. R. R. Co.*, 130 N. Y. 654, 29 N. E. 141; Under. Ev. § 57.)

The rule in this state relative to declarations forming part of the *res gestæ* is found in *The State v. Montgomery*, 8 Kan. 351, and *Tennis v. Rapid Transit Rly. Co.*, 45 id. 503, 25 Pac. 876.

The fact of Logan's death soon after the statement was made cannot affect the competency of the testimony. It was not a dying declaration, because it

Schmalstieg v. Coal Co.

was not shown that the deceased was apprehensive of impending death.    Besides this, dying declarations, except as they are so declared by statute, are not admissible in civil actions.    (2 Tayl. Ev. [Chamb. Notes] 470[3]; *The State v. O'Shea*, 60 Kan. 772, 777, 57 Pac. 970.)

The judgment of the court below will be reversed and a new trial ordered.

All the Justices concurring.