MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V.
B. E. SCHILLING.

Decided May 9, 1903.

**1.—Master and Servant—Railroads—Assumed Risk—Charge.**

A charge that it was the duty of the railway company to use ordinary care in the operation of its cars so that its employes should be reasonably safe in the discharge of their duties was not erroneous as implying that by the exercise of ordinary care employes would be safe, where in other clauses the court had distinctly charged that plaintiff assumed the risks ordinarily incident to his employment as switchman, and further placed the burden of proof on plaintiff.

**2.—Personal Injury—Lessening Injury by Operation—Charge.**

Where the court had charged at defendant's request, that if the jury found for plaintiff, in arriving at the amount of the verdict, if they believed that a surgical operation would benefit plaintiff, and that ordinary care would require him to have it performed, they should only consider plaintiff's injuries as they would have been had such operation been performed at such time as a person of ordinary prudence would have had it performed, it was proper to charge at plaintiff's request that plaintiff would not be required to have an operation performed that a person of ordinary care would not have had performed, and that if a person of such care, in the condition that plaintiff was in, would not have had the operation, they would consider plaintiff's injuries as they were without the operation.

**3.—Negligence—Proximate Cause—Coupling Cars.**

Evidence held to show that the act of the yard foreman in changing the order in which he cut the cars that were being switched, without notice to a switchman assisting, was the proximate cause of the switchman falling between them, and not the act of the engineer in suddenly stopping the engine, and to warrant the refusal of a charge on the theory that such stopping was the proximate cause.

**4.—Same—Evidence—Custom.**

It was competent for plaintiff to testify as to the usual custom in the yards there of cutting and switching cars, where he had pleaded the instructions given him at the time by the foreman, and these, together with the general instructions, were in accord with the custom; and the evidence was also admissible to show whether, under the circumstances, the foreman was guilty of negligence and for refuting any imputation of contributory negligence on plaintiff's part.

**5.—Res Gestae—Declaration.**

Testimony of a witness that he reached plaintiff a minute after he was injured, and that plaintiff said that the foreman had changed his mind as to the cut of the cars, was admissible as res gestae, and was not self-serving or hearsay.

Appeal from the District Court of Grayson. Tried below before Hon. Rice Maxcy.

*T. S. Miller* and *Head & Dillard,* for appellant.

*C. H. Smith* and *Wolfe, Hare & Semple,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, as plaintiff, instituted this suit on December 16, 1901, against the appellant as defendant, to

32 Civil—27.

recover $50,000 damages for personal injuries alleged to have been sustained on account of the negligence of its foreman, George Boggs, in giving to plaintiff, as switchman, improper orders in reference to the handling of the cars about which he was engaged in the Denison yards on the night of April 16, 1901. A trial before a jury on October 17, 1902, resulted in a verdict and judgment in favor of appellee for $13,000, to reverse which this appeal is prosecuted.

*Conclusions of Fact.*—On the 16th day of April, 1901, the appellee, while in the employ of appellant as switch brakeman in its yards at Denison, Texas, received a permanent injury, whereby he sustained damages. George Boggs was switch foreman, and it was his duty, when freight trains arrived, to see that the cars were placed on the proper track in the yards. A train came in from the south known as the "Mineola local," consisting of a caboose, five flat cars and several box cars. This train was taken possession of by the switch crew to be broken up and the cars distributed on the proper tracks. ·The train was brought down by Boggs and two switchmen to where the plaintiff was standing; Boggs called out instructions to plaintiff as to how the cars were to be placed. He said, "The caboose goes to Y and flats to the east," meaning that the caboose was to be placed on the Y track and the flat cars were to be placed on the east track, the east track being an extension of the lead track. As foreman, it was the duty of Boggs to make the cut of the cars he desired to go on the different tracks. The caboose was cut off by Boggs and kicked in on the Y track, the brakeman, Landaker, riding the caboose in for the purpose of setting the switch. After the plaintiff had closed the Y switch and seen that the proper signals were displayed, he stepped over to the west of the lead track; as the flat cars came by he waited until the southwest corner of the second flat car from the south end of the train reached him, when he boarded the same for the purpose of riding the flat cars to the east track and, at the proper time, setting the brakes. He testified that: "As the second car reached me I placed my lamp on my right hand, threw my right hand in the iron pocket and my left foot on the box below the car covering the journal of the wheel and my left hand on the car and drew myself up on the flat car, and I was just in the act of straightening up on the car when the engineer applied the air on the engine. When he did this the slack ran out of the train, which caused the cars to jerk, and it threw me forward toward the south, and as I went to step over onto the other car the two cars parted and I fell between them. The cars at this time were going eight or nine miles and hour. * * * The five flat cars should have been cut off together, not separately, one by one, but the entire five ought to have gone in coupled together. The flat cars were not cut off in this way, but the most southern car was cut off by itself from the rest."

We find the facts as above testified to, and that the foreman, Boggs, was guilty of negligence in giving the order he did, and in cutting off

the first flat car from the other four, and in not having all five of the flat cars coupled together when they were kicked in on the east track, and we further find that such negligence was the proximate cause of the injury to appellee. In deference to the verdict we find that appellee was not guilty of contributory negligence, and that he has sustained damages in the amount found by the jury.

*Conclusions of Law.*—1. It is contended that the trial court erred in instructing the jury as follows: "It is the duty of the railway company to use ordinary care in the operation of its trains and cars, so that its employes shall be reasonably safe in the discharge of their duties," the contention being that this charge assumes and tells the jury that by the exercise of ordinary care in the operation of its trains and cars the employes will be reasonably safe in the discharge of their duties, when in fact, the operation of railway trains and cars, especially with the duties of switchman, is dangerous per se, and can not be made reasonably safe for switchmen. It is further insisted that said charge is misleading. The charge should be construed as a whole, and when this is done we do not think the jury could have placed upon it the construction contended for by appellant. At the instance of the appellant the court instructed the jury that: "If you believe from the evidence that under defendant's method of conducting the switching, it was the duty of switchmen to watch out for the cuts and determine the number of cars in them, then you are instructed that the plaintiff assumed the risk in doing switching in this way, and it was the duty of himself to look out for the cuts and determine the number of cars in them; and if he was injured by a risk thus assumed, you will return a verdict for defendant." They were further instructed that the plaintiff "in entering upon the employment of a switchman with the defendant company, assumed the risks and dangers ordinarily incident to such employment, but did not assume any risks arising from the negligence of defendant, if any you find there was;" and also: "If you believe from the evidence that plaintiff's injuries, if any, were caused by one or more of the risks or dangers which were ordinarily incident to his employment as a switchman, or if from the evidence you believe that plaintiff's injuries, if any, were the results of an accident—that is, that they were not caused by any negligence of said George Boggs or of plaintiff—then, in either of these events, you will find for the defendant." The court further placed the burden of proof upon plaintiff. We do not think the jury could have inferred from the whole charge that it was possible to operate the train or cars or conduct the work of switching and making up trains without the risks and dangers ordinarily incident to such employment.

2. Complaint is also made of the following charge given at the request of plaintiff: "You are instructed that plaintiff would not be required to have an operation performed that a person in the exercise of ordinary care would not have performed. So, if you believe from the

evidence that a person of ordinary care, for his own physical welfare, in the condition in which you find and believe from the evidence plaintiff was and is, would not have an operation performed, and if you find for the plaintiff, then you will consider plaintiff's injuries in the condition that you find and believe from the evidence that they were and are without such operation." It is insisted that the evidence was not sufficient to authorize the submission to the jury of the issue as to whether or not a person in plaintiff's condition, in the exercise of ordinary care, would fail to have an operation performed, in order to obtain relief and lessen his injuries. The court had previously, at the request of appellant, instructed the jury as follows: "If you find in favor of plaintiff, then, in arriving at the amount of the verdict, you are instructed that if you believe from the evidence a surgical operation would benefit plaintiff's leg, and that the exercise of ordinary care on plaintiff's part would require him to have such operation performed, then it would be plaintiff's duty to have this done, and you will only consider plaintiff's injuries as they would be had this been done at such a time as a person of ordinary prudence would have had it performed." The court having, at the request of appellant, given the last charge quoted, it was proper for it to instruct the jury as was done in the charge requested by appellee. There was as much evidence to warrant the instruction given at the request of appellee as there was for the giving of the prior instruction on the same issue at the request of appellant.

3. It is insisted that the court erred in refusing the following special charge requested by defendant: "If you believe from the evidence that plaintiff was himself guilty of negligence, either in the manner he got upon the car, or in standing too near the end of the car after he got thereon, under the circumstances that he did, and that such negligence on his part proximately contributed toward causing his injuries, you will find in favor of defendant, even though you may believe that the defendant was also guilty of negligence which proximately contributed toward causing plaintiff's injuries." The evidence was not sufficient to raise the issue embraced in this charge, and hence there was no error in refusing the same.

4. The defendant requested the following special charge which the court refused, and its refusal is made the ground of the fifth assignment of error: "If you believe from the evidence that in the discharge of his duties plaintiff was near the end of the flat car, and that by the checking or stopping of said car he was caused to lunge or step forward in the direction it had been going and was thereby caused to fall in front of the car, you will find in favor of defendant, even though you may believe that had the car still in front of him not been negligently uncoupled he would have saved himself by stepping on it, as in such case the negligent uncoupling of such car would not be the proximate cause of plaintiff's injuries." The refusal of this charge was not error. The negligence claimed by appellee was that the foreman, after informing him that the flat cars would be cut at the last of such cars on the north,

without notice, cut off the last car on the south, thereby placing plaintiff, without warning, at a dangerous place, made so by the manner in which the work had to be done, which included the sudden stopping of the engine and cars not cut. If the cars had been cut at the point Boggs informed appellee the cut would be made, then the sudden stopping of the engine would not have affected plaintiff in his position on the car at the time he was injured. Being ignorant of the fact that the foreman had changed the cut, and not presuming that the sudden stopping of the engine would affect him in his position, he was, without warning, placed in a dangerous position which proximately caused the injury.

5. There was no error in refusing the special charge requested by defendant, the refusal of which is made the ground of the sixth assignment of error, said charge being to the effect that although the jury may believe that Boggs called, "Caboose to the Y and flats to the east track," yet if they further believed from the evidence that after this, and before the caboose was placed on the Y, Boggs gave another call which changed the call to Schilling, such as Schilling could and should have heard, and under this call, under the custom of doing the work, the switchman was himself to look out for cuts and determine how many cars they contained, then the plaintiff assumed the risk of this method of doing the business, and the jury would find for defendant. The evidence did not warrant the giving of such charge. The evidence did not tend to show a custom that the switchmen were to look out for cuts and determine how many cars they contained. The evidence shows that if any change was made in the order by Boggs the appellee had no notice of it.

6. We are of the opinion that there was no error in admitting in evidence over the objection of defendant the testimony of plaintiff that: "Under the direction of Foreman Boggs at the time this switching was being done, and from the custom while we were switching a train, the five flat cars went to the east track. Under those instructions and the custom in the yards with reference to switching a train, the flat cars should have been uncoupled from the rest of the train four cars above where the uncoupling was actually made. The five flat cars should have been cut off together, not separately, one by one, but the entire five should have gone in coupled together." While the petition sought a recovery on the special instructions given by Foreman Boggs, the general and special instructions were the same, and both being in accord with the usual custom of switching in the yards, no damage could have accrued to appellant by admitting said evidence. It would seem that evidence of the usual and customary manner of doing the work was admissible for the purpose of determining whether, under the circumstances, the foreman was guilty of negligence and for refuting any imputation of contributory negligence on the part of appellee.

7. There was no error in admitting over the objections of defendant the testimony of George Landaker, that he was twelve feet from the

plaintiff at the time he was hurt, and he went immediately to him, and that it could not have been over a minute after plaintiff was hurt before witness got to him, and that the first thing plaintiff said after witness got to him was to take his mother's address, and then said, "'Boggs changed his mind,' or cut—I forgot which it was," to which the counsel for defendant objected for the reason that the same was self-serving and hearsay. The said evidence is not self-serving or hearsay. The exclamation was admissible as res gestae. Railway Co. v. Robertson, 82 Texas, 657; Railway Co. v. Anderson, 82 Texas, 516; Railway Co. v. Davis, 65 S. W. Rep., 217; Railway Co. v. Bond, 2 Texas Civ. App., 104, 20 S. W. Rep., 930.

8. Assignments numbered from 11 to 18, inclusive, complain in one form or another of the finding of the jury. These assignments, as well as the nineteenth, to the effect that the verdict is excessive, are disposed of adversely to appellant by the conclusions of fact as found by this court.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.