No. 19,463.

EZEKIEL L. DENVER, as Administrator, etc., *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. EXPLOSION OF LOCOMOTIVE BOILER—*Personal Injuries—Verdict and Findings*. The general verdict and findings being supported by competent evidence and approved by the trial court will, under the settled rule, be upheld.

2. SAME—EXPERT WITNESSES—*Weight of Testimony for the Jury*. There are degrees of expertness and witnesses who by experience, study and observation know more about the subject in question than persons who have had no experience or especial knowledge touching such subject, are competent to testify as experts, the weight of their testimony being for the jury.

3. SAME—*Statement of Deceased—Part of Res Gestæ*. After the explosion of the locomotive boiler in question the conductor came forward and found the engineer dead and pulled the fireman, then unconscious, from the place where he lay, and about five minutes thereafter came back to him, whereupon the fireman regained consciousness and quickly stated to the conductor that the water-glass showed about half full when the explosion occurred, gave his home address, and asked to have his overclothes taken off as they were burning him. He appeared to be suffering. *Held*, that under the circumstances his statement as to the water-glass was competent as part of the *res gestæ* in an action by the administrator of the engineer against the railroad company.

4. SAME—*Excessive Verdict—Remittitur*. When from the evidence the probabilities of financial support from the son, had he lived, could not exceed $4000, a verdict for $6000 should be reduced to the former sum.

5. SAME—*Deposition of Witness—Evidence Offered to Contradict Not Admissible*. A witness who had examined the boiler which had ex-

ploded, testified by deposition, giving his opinion as to the cause of the explosion, after which the defendant sought to introduce the deposition of another witness taken by the plaintiff, but not used, for the purpose of showing by the copy of a coroner's verdict thereto attached that the witness who had served on the coroner's jury had signed a verdict that the cause of the explosion was unknown to the jurors, thereby tending to contradict his testimony given by deposition. His attention was not called to this copy, but it was offered without his having had an opportunity to examine or explain it, and its exclusion was not error.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed July 10, 1915. Modified.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*James V. Humphrey, W. S. Roark,* both of Junction City, and *Lee Monroe,* of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: This case was brought by the father and administrator to recover for the death of Calvin E. Denver by the explosion of a locomotive boiler, alleged to have been caused by worn, weak and defective material. The jury returned a verdict for the plaintiff and found among other things that the explosion was caused by defective side sheets and flue sheets caused by corrosion.

The prinicipal controversy was over the question whether the explosion was caused by weak and defective material or by the engineer's permitting the water to get too low, thereby burning or overheating the crown sheet. The contention of the defendant was supported by a greater number of witnesses than that of the plaintiff but it can not be said that the general verdict or the findings were without fair evidential basis. It would be a waste of time to go into detail and recount the various theories and views of the parties and their witnesses for it would only result in coming to the conclusion already indicated.

The defendant urges error in the admission of the evidence of certain witnesses for the reason that they were not sufficiently skillful to testify as experts, but there are degrees of expertness, and while the knowledge of at least one of these witnesses was less full, accurate and modern than that of some

of the others, it is apparent that each knew more about the subject of locomotive engines and crown sheets than one who had had no experience in their use and construction. One of these was not asked the cause of the explosion, but simply to describe the condition. It can not be said that his evidence was incompetent. The other witness complained of had had experience as a fireman on locomotive engines, had been employed in locomotive works and had given considerable study to the subject of engines, rendering him competent to testify, the weight of his evidence being for the jury.

The conductor of the train was permitted to testify as to statements made to him by the fireman on the theory that such statements were part of the *res gestæ,* and this ruling is assigned and treated as perhaps the principal error occurring upon the trial. This testimony, after preliminary statements, was as follows:

"After the explosion I went forward to the engine. I found Fireman Matthews severely burned and injured. I pulled him away from a pile of rock and then went around to the other side of the train and found Engineer Denver dead. At the time I pulled Mr. Matthews, the fireman, from under the engine he was unconscious. He afterwards regained consciousness about five or ten minutes afterwards. I don't know how long after he regained consciousness it was that I talked with him. After I pulled him out I left him before the talk with him. I remained away four or five minutes. When I returned to Matthews I had my talk with him. He was rational then.

"Q. What did he say to you.

"(Objected to as being incompetent, irrelevant and immaterial.)

"A. He told me the water-glass showed about one-half full when the explosion occurred. He gave me his home address and asked me to take off his overclothes, as they were burning him. He appeared to be suffering. These things that he said were said quickly."

CROSS-EXAMINATION: "I had a conversation with Mr. Matthews, the fireman. I don't remember who commenced that conversation, he or I. I did not ask him how long before the explosion he last examined the water-glass.

"Q. Did he state that to you? A. I think my testimony showed that.

"Q. No; I want you to answer my question. Did he state to you how long before the explosion occurred he examined the water-glass? (No answer.)"

A multitude of authorities are cited to sustain the contention that this was a mere recital of the past events and not within the rule of competency as part of the *res gestæ.* The

Denver v. Railway Co.

lapse of time after the occurrence of the event is not so important as the condition of the speaker's mind, and if from all the circumstances it appears that the statements are exclamatory rather than explanatory, are spontaneous rather than studied, and are in reality the event speaking through the person making the statements, they are admissible. In *The State v. Morrison,* 64 Kan. 669, 68 Pac. 48, within from three to five minutes after the defendant had been pulled away from Mrs. Castle the latter motioned for pencil and paper and wrote thereon "Jess Morrison killed me." (p. 679.) It was said:

"It was the first expression after the cutting, and was so closely connected with it and so spontaneous that it may be fairly regarded as part of the *res gestæ.* Under the circumstances, the interval of time which elapsed between the cutting and the writing of the words is not an objection to its admission, nor does it place it among past occurrences or isolated utterances. . . . The declaration by Mrs. Castle appears to have been voluntary and spontaneous, and so closely connected with it as to be really a part of the transaction, and to exclude the idea of fabrication." (p. 680.)

And so here, when fireman Matthews was first found by the conductor he was unconscious, and upon regaining consciousness appears to have made the three statements concerning the water-glass, his home address and his suffering from the supposed burning of his overclothes. "These things that he said were said quickly." It is almost unthinkable that the fireman in this most pitiful condition, speaking these few sentences quickly after regaining consciousness, could have been planning a statement for the benefit of some possible plaintiff in future litigation or that he was doing other than giving spontaneous expression to the truth. A very different situation is presented from that of *Railway Co. v. Logan,* 65 Kan. 748, 70 Pac. 787, for there coolness, deliberation and a request for the presence of a third person to hear the statement were all shown. (See *The State v. Alexander,* 89 Kan. 422, 131 Pac. 139.) In *The State v. Powers,* 92 Kan. 220, 139 Pac. 1166, it appeared that when the shot was fired the team of the injured person, Dawe, broke into a gallop and ran an eighth of a mile, when Dawe climbed out of the wagon, walked to the porch where he fell, and there, some twenty minutes after the shot, said that the defendant had shot him, and this was held admissible, the court approving the quotation from

the opinion in the Morrison case (p. 680) from 21 A. & E. Encycl. of L. 101, that:

"'If declarations of a past occurrence are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the *res gestæ.*'" (92 Kan. 226; 3 Wigmore on Evidence, §§ 1747-1757; 16 Cyc. 1242, 1248-1255.)

For a recent well-considered opinion and note see *Cromeenes v. Railroad Co.*, 37 Utah, 475, 109 Pac. 10, Ann. Cas. 1912 C, 307. The trial court heard the testimony of the witness to whom the statements of the fireman were made, and upon careful consideration admitted them, and in this there was no error.

The testimony showed that the father's age was fifty-one years with the expectancy of twenty and twenty hundredths years, and the mother's forty-eight with an expectency of twenty-two and thirty-six hundredths years, and the jury found that during the five years prior to his death the deceased, who was twenty-four when killed, had contributed about $400 to his parents. It is urged that the amount of the verdict, $6000, is, in view of the facts, excessive; that there is nothing to indicate that the son would have contributed more as the years increased, but on the contrary it might naturally be supposed that he would marry and devote his earnings to his own family rather than to his parents, and that annuities could be purchased for much less than the amount of the verdict which would be of far more value than any probable contribution. As was said in *Railway Co. v. Fajardo,* 74 Kan. 314, 86 Pac. 301:

"No questions of greater difficulty are presented than those involving the pecuniary loss which next of kin suffer in the death of a child." (p. 323.)

The mother testified that he said as long as he had anything he would divide with them, and a sister stated that he said if they would let him go away he would help them. He had remitted various sums from $15 to $50, his habits were good, and he was devoted to his parents. In view of the discussion in the Fajardo case and the consideration of circumstances in *Aaron v. Telephone Co.,* 89 Kan. 186, 131 Pac. 582, somewhat similar to those now presented, it is difficult to say what a fair and reasonable sum would be, but a majority of the court feel

that from the evidence the probabilities of financial support could not exceed $4000, and that no greater sum should be approved.

Witness Reddick testified by deposition, and the deposition of another witness taken by the plaintiff but not used was offered by the defendant for the purpose of showing by the copy of a coroner's inquest attached thereto that Reddick, who served on the coroner's jury, signed a verdict which stated that the cause of the explosion was unknown to the jurors, thereby tending to contradict his testimony given by deposition. His attention was not called to this copy but it was offered without his having had any opportunity to examine or explain it and in view of the decisions in *Greer v. Higgins,* 20 Kan. 420, and *The State v. Bartley,* 48 Kan. 421, 29 Pac. 701, and cases there cited, it was not error to exclude the offered evidence.

In criticism of certain of the findings it is asserted that they are opposed to the uncontradicted testimony of named witnesses. It may be said, however, that testimony of all the witnesses, together with the circumstances and conditions shown thereby, furnished support for the answers returned.

Finding no material error in the record except as to the amount of the verdict the judgment will be modified by a reduction to four thousand dollars, subject to the right of the plaintiff to a new trial upon the sole question of amount of damages by filing a written request within ten days after the mandate issues.