No. 20,106.

SADIE KING, as Administratrix, etc., *Appellee,* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WRONGFUL DEATH—*Collision between Switch Engines at Crossing—Contributory Negligence for Jury.*   The testimony relating to a collision between two switch engines at a crossing where the line of one railroad intersected that of another, and which resulted in the death of an engineer in charge of an engine, examined, and it is held that it tends to support the finding of the jury that the collision and resulting death were occasioned by the negligence of the defendant, and that the deceased, who first approached the crossing and gave the required signals and had the right of way, can not be held to be guilty of contributory negligence, although he proceeded to the crossing after he was told by his fireman that the latter did not believe those in charge of the defendant's engine were going to stop and give the signals for the crossing, as they were required to do.

2. SAME—*Contributory Negligence—For Determination of Jury.*   The deceased, who had reached the crossing first and given the required signals when the defendant's engine had not yet reached the stopping board, had a right to assume that those in charge of defendant's engine would comply with the rules, stop within the prescribed limits, and yield the right of way to deceased, and as they did not stop and give the required signals, the question whether the deceased exercised due care and diligence thereafter to avoid a collision was one for the determination of the jury.

3. SAME—*Statements of Enginemen—Competent Evidence.*   Expressions made by those in charge of defendant's engine immediately after the collision, relating to the care exercised by them in approaching the crossing, are deemed to have been instinctive and spontaneous, and testimony thereof to be admissible as *res gestæ.*

49—97 KAN.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed April 8, 1916. Affirmed.

*W. P. Waggener, A. E. Crane*, both of Atchison, *R. R. Vermilion*, and *O. H. Bentley*, both of Wichita, for the appellant.

*Henry Lampl, Tom Elcock, J. D. Houston*, and *C. H. Brooks*, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover damages for the death of William King, who was killed on May 9, 1914, in a collision between two switch engines in the city of Wichita. The action was brought by Sadie King, as administratrix of King's estate, for the benefit of herself as his widow. The jury returned a general verdict for the plaintiff and answers to certain special questions.

The collision occurred about 5 o'clock in the morning at a crossing of the Missouri Pacific and Rock Island tracks near Twenty-first street. The Rock Island track runs nearly north and south and that of the Missouri Pacific nearly northeast and southwest. To the northwest and near the crossing was a transfer track connecting the tracks of the two railroads, on which several box cars were standing. King was the engineer of the Rock Island engine, which shortly before the accident was running south towards the crossing, tender foremost, pulling several cars. Besides King and his fireman, there were two switchmen aboard. At Twenty-first street, which crosses the Rock Island track at a point three hundred thirty-two feet north of the crossing, the engine stopped and whistled twice for the crossing, and then proceeded again at a rate of about three or four miles an hour. As the engine was leaving Twenty-first street, one of the switchmen noticed the Missouri Pacific engine coming toward the crossing from the southwest and told the fireman about it. The latter immediately climbed up into his seat and observed that the Missouri Pacific engine, which was then about one thousand feet away, was coming at a rapid rate, and thereafter he kept a watch on the progress of the Missouri Pacific engine until the collision took place, except for a brief moment while the engine was passing the box cars

on the transfer track. The fireman had immediately notified King of the approach of the Missouri Pacific engine, telling him that the engine was still coming and that he did not believe it was going to stop for the crossing, and the reply of King was, "Watch him," or an expression of that import. According to the fireman's testimony, the approaching engine at this time was still within the limits for stopping; that is, between two hundred and eight hundred feet from the crossing. King made no effort to stop his engine afterwards except that there was a little slackening of speed immediately before the collision. The Missouri Pacific engine, which had no cars attached, approached the railway crossing at a rate of speed estimated by some of the witnesses to be twenty-five miles an hour. King and those with him seemed to have proceeded on the theory that he had the right of way, and that those in charge of the Missouri Pacific engine would stop and give the Rock Island engine time to pass over. The Missouri Pacific engine struck the tender of the Rock Island engine, pinning King underneath and killing him. The jury found that the defendant was negligent in not keeping a proper lookout for the Rock Island engine, also in approaching the crossing at an unlawful rate of speed, and further in running the crossing without stopping and giving the required signals. There were additional findings that the Rock Island engine had the right of way over the crossing, that the fireman saw the Missouri Pacific engine approaching in the distance and informed King that it was coming. It was also found that the fireman said to King that he did not believe that the engine was going to stop, and in reply King said, "Watch him." There was a further finding that King at that time had his engine under control and could have stopped it in a distance of twenty-five feet but did nothing toward stopping it.

It is insisted by the defendant that under the evidence as well as the findings King was guilty of contributory negligence which bars a recovery. The contention is that he was given timely warning of the approach of the Missouri Pacific engine, that his own was then under control running at a rate of about four miles an hour, and yet he did nothing to stop his engine or to avoid the collision. It can hardly be said, however, that the neglect of King was the proximate cause of the

collision and of his own death. He had the right of way over the crossing, and when he stopped and whistled, about three hundred and thirty feet from the crossing, the Missouri Pacific engine was then more than a thousand feet from the crossing. He proceeded slowly towards the crossing, and when about three car-lengths from the crossing, or one hundred feet, and although he was told by the fireman that the Missouri Pacific engine was coming and that those in charge of it acted as if they were not going to stop, it can hardly be said he was inattentive to his duties or took no precaution thereafter, because he admonished the fireman to watch them. The fireman who made this statement testified that he did not know whether or not the Missouri Pacific engine was going to stop, saying: "I did not know positively whether it was going to stop until it hit us." Notwithstanding the remark of the fireman, King had a right to expect that the other engine would stop and whistle as the rules and regulations required. The Missouri Pacific engine was still beyond the whistling post and in the limits within which the stop was to be made. Naturally he would think that the surmise of the fireman was not well founded, but at any rate he did not neglect the warning, as he said: "See if they stop and whistle." It does not appear that the fireman told King the result of the watch he was admonished to keep. According to the testimony of the defendant's witnesses the Missouri Pacific engine afterwards almost came to a stop when it was between two and three hundred feet from the crossing, where it is said one of the switchmen jumped off and went in front of the engine to obtain an order from the bill box. Whatever the fact may have been in this regard, the statement of the fireman that the engine was not going to stop was only a surmise, and the fact that it was made neither convicts nor absolves King of the charge of negligence. He could not absolutely rely on or be governed by the speculation of the fireman as to whether there was danger in proceeding nor upon his assurances that there was no danger. It still devolved upon him to use his eyes and ears and to exercise ordinary care in handling the engine and in avoiding the collision. The warning of the fireman was, of course, to be taken into account by the jury in determining whether he was exercising due care, but it was still incumbent on King

to decide for himself whether or not he could proceed over the crossing. Whether he exercised ordinary care under the circumstances in proceeding was a question for the determination of the jury. The jury have said that notwithstanding the statement of the fireman, King did not fail to exercise due care; that is, the care which ordinarily prudent persons exercise under similar circumstances. He had a right to assume, and probably did assume, that those operating the Missouri Pacific engine would obey the rules requiring them to stop and signal when they approached the crossing, and that they would yield the crossing to his engine, which clearly had the right of way and was then almost on the crossing. The special findings are not deemed to be inconsistent with the general finding which held King to be free from negligence, and upon the evidence it can not be said as a matter of law that King was guilty of contributory negligence.

An objection was made to the admission in evidence of statements made by the engineer and fireman in charge of the Missouri Pacific engine immediately after the collision, wherein it was testified that Norris, the engineer, said to Dotts, the fireman: "I thought you said the crossing was clear," and Dotts answered: "I did n't tell you any such damn thing," or words to that effect. The objection then made was that the evidence was incompetent, was not proper impeaching testimony, and no proper foundation had been laid. The contention now is that the objection should have been sustained because it was hearsay testimony, but, as has been seen, that was not the objection which was made when the testimony was produced. It is next said that the testimony could not be admitted in the case unless it was part of the *res gestæ*. The statements made by them immediately after their engine had struck and overturned that of King, killing him, was, in the nature of things, instinctive and spontaneous. They were made, too, by participants in the collision and so closely connected with the collision as to be a part of it. Within the authority of *Denver v. Railway Co.*, 96 Kan. 154, 150 Pac. 562, the statements were admissible as *res gestæ*.

There is some complaint of an instruction as to which of the engines had the right of way at the crossing. There is a rule to the effect that the senior company, which is the Mis-

souri Pacific, has the right of way where the engines simultaneously approach a crossing, and the jury were advised that if the two engines approached simultaneously the Missouri Pacific became entitled to the right of way, and in that event it was the duty of King to yield it to those in charge of the Missouri Pacific engine. On the other hand, they were told that if the engines did not approach the crossing simultaneously, but that King's engine came to a stop and gave the signal before the other had reached the crossing-post or had stopped and given the signal, it could not be said that there was a simultaneous approach to the crossing, and that King would therefore have the right of way over the crossing. Under the testimony, the approach of the Rock Island engine was so much earlier than that of the Missouri Pacific that there is no substantial basis for a claim of simultaneous approach and no possible error could have resulted from the instruction. The charge given fairly covered all the issues in the case, and we find nothing material in the complaint made as to those given or refused.

The judgment is affirmed.