No. 22,417.

ERNEST MAYEUR, *Appellant*, v. THE J. R. CROWE COAL AND
MINING COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injuries—When Statements of Injured Workman as to Cause of Injury are Admissible.* The rule that before declarations or statements of an injured person as to the cause of his injury are admissible in evidence they must be shown to have been made at a point of time so close to the injury as to appear entirely spontaneous, is applied to an action under the workmen's compensation law.

2. SAME—*Evidence—Statement of Injured Workman Inadmissible.* In an action under the workmen's compensation law there was evidence that at 7 o'clock in the morning, when the deceased went to work, he was apparently in good health. A fellow workman testified that between 10 and 12 o'clock in the forenoon of the same day the deceased complained of his leg hurting him, and said that a rock fell on it. *Held*, that the statement as to the cause of the injury was properly excluded, there being no evidence of the exact time when the deceased was injured, if at all.

3. SAME—*Injury to Workman—Circumstantial Evidence.* In an action under the workmen's compensation law it is not required that plaintiff's case be established by direct evidence; circumstantial evidence is sufficient, but it must be such as would justify an inference that the injury was due to an accident arising out of and in the course of the workman's employment, and these facts must not be left to speculation or conjecture.

4. SAME—*Findings Supported by Evidence.* In an action under the workmen's compensation law a judgment in defendant's favor must be affirmed where it is supported by a finding that it was not shown that deceased was injured by an accident arising out of and within the course of his employment.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed January 10, 1920. Affirmed.

*Phil H. Callery*, and *F. B. Wheeler*, both of Pittsburg, for the appellant.

*J. J. Campbell, P. E. Nulton*, and *C. O. Pingry*, all of Pittsburg, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was under the workmen's compensation law, and was brought by the father of a deceased workman to recover compensation for the son's death. Charles Mayeur, the plaintiff's son, was 23 years of age. He lived at his father's home, and was employed as a driver in one of the coal mines operated by the defendant. On the morning of July 22, 1917, when he left home to go to the mines, he was apparently in good condition and in sound health. At noon, when he came to eat dinner, he was limping; he continued work until about 2:30 o'clock in the afternoon, when he quit and went home. He was limping when he reached home, and his leg was swollen. There were no bruises on the leg, but a small particle of the skin seemed to be rubbed. He returned to the mine the next day and worked until about 10 o'clock in the morning, and then went home. Two or three days after July 22 he went to see Doctor Sandage at Mulberry, who treated his leg three or four times, and advised an operation; the young man was taken to the hospital and an operation performed on the middle third region of the leg about half way between the knee and the hip on the outer side, disclosing a diseased condition of the periosteum. The bone was serrated, or scraped. The infection spread through the lymphatic supply of the entire body, resulting in death about a month after the operation.

The trial court made brief findings of fact to the effect that Charles Mayeur died as result of some injury to his left leg, and that it was not shown, "and the court does not know, in what manner, or by what means" the deceased was injured; that it was not shown that he was injured by an accident arising out of and within the course of his employment with the defendant. Judgment was rendered in favor of the defendant and against the plaintiff. A motion for a new trial was overruled, and the plaintiff brings the case here for review.

The principal complaint is, the refusal to admit in evidence statements made to other persons by the deceased to the effect that a rock fell upon his leg. The character of evidence which the court excluded is shown by the testimony of Andrew Rowley, who was a driver in the same mine and well acquainted

with Charles Mayeur. After testifying that he had never heard the deceased make any complaint about being ill in any way, had never seen any manifestations of his being otherwise than in a normal condition; never had seen him limping or walking in a crippled condition until July 22, the witness then stated that sometime between 10 and 12 o'clock in the forenoon of July 22 Charles Mayeur was complaining of his left leg hurting him and said that a rock fell on it. The last part of the answer was, on defendant's motion, stricken from the record as incompetent, and hearsay. There was no eyewitness to the accident. The physicians who performed the operation were not permitted to testify to what the deceased told them about the occasion for the injury or the manner in which it was received. A sister of the deceased attempted to make a statement relating to the source of the injury as detailed to her by the deceased, and that was stricken out.

Both Dr. Sandage and Dr. Smith testified that the condition of the bone as they found it was caused from an injury, or from either hereditary or acquired syphilis; but they seemed to be unable to determine what caused the infection of the leg. Dr. Sandage, who first examined the deceased, was asked if he had an opinion or judgment as to what the injury came from. His answer was, "Well, I have two opinions and I don't know which one is right." He was then asked to state both opinions. His answer was, "One due to an injury—may have been due to a direct blow, or it may have been due to hereditary syphilis, or acquired syphilis." In his treatment of the deceased, he found no evidence of syphilis, at least he "did n't think so at that time." He further testified:

"I did not find any discoloration of the leg; there wasn't a sign of a bruise of the skin, or anything, because that is what puzzled me. There was no external evidence of injury of any kind. No darkening of the skin. It must have been three or four days after he came to my office before he was taken to the hospital and then the operation was performed. I think it was something like a month after the operation that he died. The condition we found to exist from an injury without some evidence some external evidence of injury there, was unusual, and before we operated we argued the pros and cons for two or three hours. The operation was on the middle third region of the leg about half way between the knee and the hip on the outer side. There are pretty heavy muscles in this middle third region and it would take a pretty hard blow there to

cause an injury to the periosteum. And a person with imagination could hardly conceive how it could happen and still there was absolutely no evidence of any external injury there, at the time I saw him."

There was no evidence that there was any fall of rock in the entry of the mine, or at any other place in the mine, on July 22, 1917, or at any other time. It devolved upon the plaintiff to establish the fact that the deceased was not only injured in the manner claimed, but to produce evidence to show that he was injured by an accident that arose out of and in the course of his employment by the defendant. The law does not require that the case shall be established by direct evidence; circumstantial evidence is sufficient. But the circumstantial evidence must be such as would justify an inference that the injury was due to an accident arising out of and in the course of the employment, and must not be left to speculation or conjecture.

The rule is, that for statements of an injured person to be admissible in evidence, they must be shown to have been made at a point of time so close to the alleged injury as to be entirely spontaneous. As said in *The State v. Powers*, 92 Kan. 220, 225, 139 Pac. 1166:

"To be admissible as part of the *res gestæ*, as that term is commonly used, it must have been uttered so near in point of time to the act referred to that the nervous excitement may still be supposed to dominate, and the reflective powers to be in abeyance. (3 Wigmore on Evidence, § 1750.) 'What the law altogether distrusts is not after-speech but afterthought. . . . That they [the declarations] shall be, or appear to be, spontaneous is indispensable, and it is for this reason alone that they are required to be speedy.' (*Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 775, 776.)"

In the present case there was no evidence showing just when Charles Mayeur was injured, if he received an injury at all. He might have been injured in the mine at any time between 7 o'clock and 10 or 12 o'clock in the forenoon. The first statement in point of time claimed to have been made by the deceased was the one testified to by Andrew Rowley. Rowley saw the deceased between 10 and 12 o'clock in the forenoon of July 22. The statements to other witnesses were all made several hours later. In our opinion, none of them come within the rule admitting statements of this character.

There is the further contention that, aside from the ex-

cluded evidence, the court should have rendered judgment in plaintiff's favor. But the evidence was not sufficient to satisfy the court that the deceased was injured by an accident arising out of and in the course of his employment, and in that situation it was the duty of the court to decide against the plaintiff.

The judgment is affirmed.