No. 41,231

ROSE MAE DRAKE, *Appellee,* v. L. W. MOORE and L. W. MOORE, JR.,
d/b/a L. W. MOORE & SON, and EMPLOYERS MUTUAL CASUALTY
COMPANY, *Appellants.*

(336 P. 2d 807)

Opinion filed
March 7, 1959.

*Wayne Coulson,* of Wichita, argued the cause, and *H. Lee Turner,* of Great
Bend, and *Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. New-
kirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees,*

Robert T. Cornwell, Willard B. Thompson, and Hugo T. Wedell, of Counsel, all of Wichita, were with him on the briefs for the appellants.

Loyd H. Phillips and Tudor W. Hampton, of Great Bend, argued the cause, and Robert E. Southern and Jerry M. Ward, also of Great Bend, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action to recover damages for the wrongful death of plaintiff's husband. From a verdict and judgment in favor of plaintiff, defendants appeal.

Except as they define the issues, the pleadings are unimportant and require little discussion. All that need be said respecting them is that Rose Mae Drake, plaintiff (appellee), alleged that on September 22, 1955, at approximately 7:15 p. m., her husband, Earl Drake, was driving an automobile west on U. S. highway No. 50 North at an approximate speed of fifty miles an hour; that through their agent, one Mr. Griffith, defendants (appellants) L. W. Moore and L. W. Moore, Jr., d/b/a L. W. Moore & Son, were operating a truck and crude-oil transport semi-trailer in the same direction and on the same highway; that Griffith stopped defendants' truck and trailer in the westbound lane of traffic in such a manner as to obstruct traffic therein; that neither the truck nor the semi-trailer had any taillights or clearance lights burning, nor had flares or reflectors been set out either in front of or behind the truck and trailer, as required by law; that the rear end of the semi-trailer was a dark, drab and dirty color, and stood high enough off the ground as to be above the range of decedent Drake's lights so that he was unable to see the truck or trailer until too close to stop the car in time to avoid the collision; that by reason of the collision, plaintiff's husband received injuries which resulted in his death the following day. Plaintiff alleged the collision and resultant death of her husband were proximately caused by the negligence of defendants' employee in stopping the truck and trailer and leaving them on the main traveled portion of the highway, when it would have been practical to have driven the truck and trailer off the highway prior to stopping thereon; and in failing to have proper lights to the rear of the truck and trailer, as well as clearance lights, lanterns or red reflectors, all as provided by statute.

Defendants' answer denied they were guilty of negligence and alleged plaintiff was barred from recovery on the ground decedent was guilty of contributory negligence in driving at an excessive

rate of speed, failing to keep a proper lookout and failing to keep his car under control. Plaintiff replied by way of a general denial.

Plaintiff's evidence in support of the allegations contained in her petition, when viewed in the light most favorable to her as a prevailing party, may be briefly stated: Defendants' employee, Griffith, was operating a crude-oil transport truck and trailer in a westerly direction on U. S. highway No. 50 North on the day in question and was returning to Great Bend after delivering a load of crude oil. When he got about four and one-half miles west of Chase, Kansas, it commenced raining very hard. The side panels on the hood of the truck over the engine had been previously removed so that the motor would not heat. Griffith testified that he had been driving twenty to twenty-five miles an hour when the engine got wet; that "The missing of the motor slowed the tractor down and it acted like it was going to go ahead and run all right, then it just quit all at once. After the motor stopped the truck coasted for a distance of approximately its length." Griffith further testified he could have pulled off the highway onto the shoulder of the road before he reached the place where the truck finally stalled, but he did not think the motor was going to quit completely.

The truck stalled on an incline in the westbound lane of traffic, and so remained for a period of twenty to twenty-five minutes prior to the collision. The pavement at the point in question was concrete surface and twenty-two feet wide and on the east slope of a slight hill. The highway had dirt shoulders approximately eight feet wide. The left side of the truck and semi-trailer was approximately two feet from the center line of the highway and thirteen feet from the south edge of the pavement. The rear end of the semi-trailer was a dark, drab and dirty color and the rear bumper stood about thirty to thirty-six inches above the level of the pavement. There were no lights such as clearance lights, tail lights, or any lights whatsoever to the rear of the truck and trailer, and there were no reflector lights out at the time of the collision.

As soon as the truck stopped Griffith tried unsuccessfully to start the engine. Two men came along soon after and their attempt to start the truck was also unsuccessful. They left to get help, and in the meantime Griffith directed traffic until one Mr. Branson drove up in his truck and offered help. He arranged to pull the stalled truck in order to start it, but the first attempt was unsuccessful. While making his second attempt to pull the truck, he heard a crash, got

out of his truck, and saw plaintiff's husband wandering across the highway in a southerly direction. Decedent was bending over, and he complained that his chest hurt; when he reached the side of the highway he squatted down and held his chest.

Within a minute or two after the accident and between 7:00 and 7:30 p. m., Mr. Tambella, who was driving his car west on the same highway, was flagged down by a man with a flashlight and was asked to take decedent to the hospital, which he did immediately thereafter. Mr. Tambella testified that he saw defendants' truck parked in the westbound lane of traffic and at the rear and partially underneath defendants' trailer the automobile which had been driven by plaintiff's husband. He further testified as follows: "Q. Now, at the time did you observe the rear of the truck? A. Yes, sir. Q. Were they [there] any lights, clearance lights on it? A. No, sir. Q. Were there any taillights on it? A. No, sir, I could see none. Q. Were there any lights whatsoever on it? A. No, sir." "Q. Did you observe any warning signals whatsoever, except the arm of the man in the first pickup and the flashlight? A. No. Q. Such as flares or reflectors or anything like that? A. No, sir." Further testifying, in answer to what he saw as he proceeded farther, he said: "There was something like an accident, but I couldn't—the only thing I could see ahead was a person waving a flashlight in this motion (indicating), . . ." He also testified that when he was six or seven car-lengths east of the rear of the wrecked vehicles he saw no "lights or reflectors, taillights or clearance lights." In answer to the question regarding weather conditions at that time he said, "It was dark and wet, it was raining at the time." He also testified that he left the scene of the accident with decedent and arrived at the Ellinwood Hospital "close to eight o'clock."

Mr. Doughty, highway patrolman, testified that the truck and trailer were completely on the north half of the paved portion of the highway; that the trailer was painted black with some gray on it and the back of it was mostly black.

Plaintiff, her daughter and Doctor White arrived at the hospital around eight o'clock and found Mr. Drake in pain, vomiting blood, in a state of shock, and receiving oxygen by way of a nasal catheter. In answer to an inquiry as to what had happened, he stated, in substance, that he had hit a truck and there were no lights on it. Doctor White testified that Mr. Drake's statement appeared reliable and that he died the next day as a result of his injuries.

Defendants' motion to strike certain portions of plaintiff's evidence, their demurrer to plaintiff's evidence and their motion for a directed verdict at the close of the evidence were overruled and the case was presented to the jury, which returned a general verdict for plaintiff. At the same time, the jury returned its answers to special interrogatories submitted by the court, as follows:

"No. 1: Were there flares out at the time of the accident? Answer: No."

"No. 3: What was the approximate speed of the Drake car at the time it hit the Moore truck? Answer: 24 miles per hour.

· "No. 4: What if anything prevented Mr. Drake from bringing his car to a stop or otherwise avoiding the collision? Answer: Wet pavement.

"No. 5: Do you find the driver of the Moore truck guilty of negligence which was a proximate cause of the accident? Answer: Yes.

"No. 6: If your answer is 'yes' state what that negligence was? Answer: Truck should have been moved off traffic lane.

"No. 7: Do you find Mr. Drake was guilty of negligence which was a proximate cause of the accident? Answer: No."

Following the overruling of defendants' post-trial motions, they appealed. In their brief defendants jointly discuss their first two assignments of error and we will do likewise. They contend their demurrer to plaintiff's evidence, their motion for a directed verdict and their motion for judgment on the answers to the special questions notwithstanding the general verdict should have been sustained on the ground that the evidence and the answers to the special questions disclosed plaintiff's husband was guilty of contributory negligence as a matter of law in operating his automobile in the nighttime at such a speed it could not be stopped within the radius of its headlights or within a distance that objects and obstructions could be seen ahead of it. In other words, it is defendants' contention that the so-called "range of vision" rule applies in the instant case, and as a matter of law plaintiff is barred by reason of the contributory negligence of her deceased husband.

In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any differences between the direct and cross-examination; and if so considered, there is any evidence which sustains plaintiff's case on any theory, the demurrer should be overruled. (*Marshall v. Bailey,* 183 Kan. 310, 314, 327 P. 2d 1034; *Kendrick v. Atchison T. & S. F. Rld. Co.,* 182 Kan. 249, 320 P. 2d 1061; *Jones*

*v. Coate*, 180 Kan. 597, 306 P. 2d 148; and more than a score of recent cases sustaining this rule to be found in 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, §§ 149, 150 and 151, and 9 West's Kansas Digest, Trial, § 156 [2] and [3].)

It may again be stated that contributory negligence is never presumed; it must be established by proof, and when the plaintiff's evidence does not disclose his own contributory negligence as a matter of law, the jury has an absolute right to disbelieve and disregard all evidence tending to establish its existence. *(Blakeman v. Lofland*, 173 Kan. 725, 731, 252 P. 2d 852; *Finch v. Phillips*, 183 Kan. 219, 223, 326 P. 2d 763.)

We have also held that ordinarily, and in the absence of convincing evidence to the contrary, it will be presumed a deceased person exercised reasonable care for his own safety. *(Long v. Foley*, 180 Kan. 83, 91, 92, 299 P. 2d 63; *Townsend, Administrator v. Jones*, 183 Kan. 543, 553, 331 P. 2d 890; *Finch v. Phillips*, supra.)

Another well-established rule in this state is that in determining whether a plaintiff [decedent] is guilty of contributory negligence when tested by a demurrer, the question must be submitted to the jury if the facts of record are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon. The question of whether a negligent act is the proximate cause of an injury, and whether an ordinarily reasonable, prudent man would have seen that injury might have occurred as a result of a negligent act, is also a question of fact for the jury. *(Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 49, 204 P. 2d 752; and numerous cases cited in 4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, § 75; 7A West's Kansas Digest, Negligence, § 136 [9].)

Being cognizant of these rules, let us review some of the facts: Decedent, while driving down the highway on a dark, rainy night, collided with the rear end of a semi-trailer and truck that stood squarely in the middle of the traffic lane in which he was driving. There were no lights burning on the truck or trailer to warn oncoming motorists of such obstruction, as is required by law. The rear end of the trailer was a dull, drab and dirty color, making it difficult to be seen at night. The truck and trailer were stalled on an incline and the trailer was so high above the pavement level that it was above the range of decedent's headlights; as a result, the obstruction could not be seen until he was too close to avoid the collision.

Under these facts and circumstances and in view of the presumption that decedent exercised due care for his own safety, it is clear that reasonable minds could differ on the question of whether decedent was guilty of contributory negligence. It was therefore a question of fact for the jury. Moreover, decedent, proceeding along the highway, had a right to assume there were no hidden, undisclosed defects, such as an unlighted truck, standing in the path of travel. The purpose of highways is for passage, travel, traffic, transportation and they are not maintained for the purpose of providing storage of automobiles. It is essential under our statute that an automobile or truck display a red light at the rear thereof which is visible at night, and its purpose is to provide a danger signal to overtaking traffic. A warning by proper lights is more necessary when the automobile is at rest than when it is in motion. (*McCoy v. Pittsburg Boiler and Machine Co.*, 124 Kan. 414, 261 Pac. 30; *Sponable v. Thomas*, 139 Kan. 710, 720, 33 P. 2d 721; *Towell v. Staley*, 161 Kan. 127, 134, 135, 166 P. 2d 699; *Drennan v. Penn. Casualty Co.*, 162 Kan. 286, 176 P. 2d 522.)

After an analysis of the evidence in the instant case and in view of the foregoing rules of law, we are of the opinion that the "range of vision" rule, as applied to the facts in *Bottenberg Implement Co. v. Sheffield*, 171 Kan. 67, 229 P. 2d 1004; *Eldridge v. Sargent*, 150 Kan. 824, 96 P. 2d 870, and other cases relied on by defendants, is not controlling herein. Conceding that in a legion of reported negligence cases there may be found decisions in which something has been held or said that can be regarded as tending to support the respective contentions advanced by each of the parties, it must be kept in mind that every negligence action is first of all dependent on the factual situation disclosed by the record on which it is decided. There are, of course, certain fundamental principles of law applicable to negligence actions generally, but in the final analysis the facts of each particular case determine its decision when tested by those principles. (*Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 617, 185 P. 2d 158; and *Townsend, Administrator v. Jones*, supra.)

In *Towell v. Staley*, 161 Kan. 127, 135, 166 P. 2d 699, which was somewhat analogous to the instant case, this court stated, in quoting from *Meneley v. Montgomery*, 145 Kan. 109, 112, 64 P. 2d 550:

" 'Whether the driver of the coupe, in this case, was able to observe the cattle truck in her lane of traffic in time to prevent the collision, with the proper exercise of care under all the circumstances, could not be answered as a matter of law, but was a proper question for the jury. To adopt the con-

tention advocated by appellants as conclusive in every situation where an obstruction unexpectedly appears without warning would result in the erection of a legal monstrosity, the effects of which would be too terrible to contemplate. Carried to its logical conclusion, that doctrine would mean that a vehicle approaching from an opposite direction could suddenly and without warning turn squarely in front of a car traveling at a reasonable and proper rate of speed, in its own proper lane, and thereby make the latter guilty of negligence. The contention is untenable.' "

We stated further at pages 135 and 139:

"As a matter of practical comparison, it makes little difference whether the object suddenly appears in front of a car because it turned squarely in front of it, or whether the obstruction suddenly appears because of its unlighted condition and the effect of bright lights—over neither of which elements the driver of an approaching automobile has any degree of control."

"Surely this court would not be justified in holding that cars or trucks can be left upon the highway in defiance of the statute and the owners or drivers thereof be relieved in all cases from responding in damages by reason of a rule which holds that anyone who runs into the parked vehicles is guilty of contributory negligence as a matter of law."

To the same effect, see *Winfough v. Tri-State Insurance Co.*, 179 Kan. 525, 297 P. 2d 159, and *Drennan v. Penn. Casualty Co.*, supra.

We are of the opinion that the facts in the instant case bring it within the exceptions to the "range of vision" rule.

Defendants contend the answer to special question No. 4 convicts decedent of contributory negligence as a matter of law. There is no merit to this contention. The jury found the proximate cause of the collision was defendants' failure to move the truck off the traffic lane, and exonerated decedent from any negligence contributing to the collision.

There was evidence to sustain the answers to the special questions. There is no conflict in the answers nor is there any conflict between the answers to the special questions and the general verdict.

Defendants next contend that the trial court erred in admitting into evidence, over their objections, the statements or declarations made by decedent after he had arrived at the hospital. The statements were admitted during the direct examination of decedent's wife and daughter and Doctor White on the theory that such statements were a part of *res gestae*. The claim is that the statements, made some thirty to forty-five minutes after the accident occurred, were not within the *res gestae* exception to the hearsay rule because of the intervening time interval.

We do not agree. The *res gestae* or, more properly, "spontaneous

exclamation" exception to the hearsay rule is stated in VI Wigmore on Evidence (3rd Ed.), § 1747, p. 135:

"This general principal is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

M. C. Slough, in his article, "Res Gestae," 2 Kan. L. Rev., 41, 248, said:

"For the hearsay exception to operate, three distinct requirements must be met: *(a)* There must be some occasion startling enough to produce nervous excitement, thus rendering the utterance spontaneous and unreflective. *(b)* The utterance must have been made before there has been time to contrive and misrepresent, while the nervous excitement still dominates. *(c)* The utterance must relate to the circumstances of the occurrence which produced the nervous excitement, hence only facts directly related to the startling event itself may be accepted in evidence.

"Whether these requisites are well satisfied is a preliminary question for the trial judge, and his determination will generally be final. It will be sufficient if under all the existing facts it can be said that the *declarations or statements* spring spontaneously from the event or incident in issue, tend to explain it, and are made so soon thereafter that it is reasonable to exclude the idea of deliberate design in making them."

We are of the opinion that the evidence in the instant case meets all mentioned requirements.

Spontaneous statements so made as to reasonably exclude the element of deliberate design are clearly admissible in this state as an exception to the hearsay rule. (*Mayeur v. Mining Co.,* 106 Kan. 123, 126, 186 Pac. 1035; *Denver v. Railway Co.,* 96 Kan. 154, 156, 157, 150 Pac. 562.) See also *State v. Morrison,* 64 Kan. 669, 680, 68 Pac. 48; *State v. McCrady,* 152 Kan. 566, 568, 106 P. 2d 696; *State v. Funk,* 154 Kan. 300, 303, 118 P. 2d 562.

The lapse of time between the occurrence of the accident and the utterance of the statements is not as important as the condition of the speaker's mind. (*Denver v. Railway Co.,* supra; *Railway Co. v. Logan,* 65 Kan. 748, 751, 70 Pac. 878.) In *Denver v. Railway Co.,* supra, pp. 156, 157, it was said:

"The lapse of time after the occurrence of the event is not so important as the condition of the speaker's mind, and if from all the circumstances it appears that the statements are exclamatory rather than explanatory, are spontaneous rather than studied, and are in reality the event speaking through the person making the statements, they are admissible."

In VI Wigmore on Evidence (3rd Ed.), § 1750, pp. 142-143, the following language is found:

"The utterance must have been *before there has been time to contrive and misrepresent*, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.

"It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated."

"Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances."

See also *State v. McCrady,* supra, p. 568, and 53 A. L. R. 2d Anno., § 7, p. 1265.

The undisputed evidence in the case at bar shows that at the time the statements were made the decedent was nervous, apprehensive, vomiting blood, in a state of shock, and receiving oxygen. Under such circumstances there was no reason to believe his statements were other than voluntary and spontaneous. A great deal of room must be left to the discretion of the trial court in determining admissibility of evidence as a part of the res gestae. *(State v. McCrady,* supra, p. 568; 2 Kan. L. Rev., 41, 248; 53 A. L. R. 2d Anno., § 5, pp. 1260, 1261.) The record discloses there was a full and complete argument before the trial court on the question of the admissibility of the evidence, and the court ruled adverse to defendants. We cannot say the court erred or abused its discretion.

Defendants further contend the trial court erred in giving instruction No. 21 because there was no evidence that their truck was of such a character or so placed that it could not, in the exercise of ordinary care, have been seen in time to be avoided. It would serve no useful purpose to set out the instruction in question. Suffice it to say, there was substantial evidence which would justify the court in giving it.

Defendants' last contention is that the trial court erred in refusing to give their requested instruction No. 4 on weighing positive and negative evidence. There was positive evidence to the effect there were no lights on or flares in the vicinity of the truck at the time

of the collision. However, on cross-examination, one of the wit-nesses testified he did not see any lights. Considering the court's instructions as a whole, we think they fairly apprised the jury of all the issues in this case and it was not prejudicial error to refuse defendants' requested instruction.

The judgment of the trial court is affirmed.

It is so ordered.