**Nelson L. BURGEN, Plaintiff,**

v.

**James O. SMITH et al., Defendants,**

v.

**Nelson L. BURGEN et al., Third-Party Defendants.**

**Erma JACOBS, wife and heir at law of Paul O. Jacobs, Plaintiff,**

v.

**James O. SMITH et al., Defendants,**

v.

**Nelson L. BURGEN et al., Third-Party Defendants.**

**Civ. A. Nos. T–4503, T–4504.**

United States District Court,
D. Kansas.

Oct. 30, 1970.

198

Charles Fisher, Jr., Topeka, Kan., for Nelson L. Burgen and Erma Jacobs.

Jan Leuenberger, Topeka, Kan., for Sophus Hicks, Steel Haulers, Transit Casualty Co.

Sam Crow, Topeka, Kan., for Judith Jackson.

Carl W. Quarnstrom, Topeka, Kan., for James Smith.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

### PRELIMINARY STATEMENT AND GENERAL FINDINGS

TEMPLAR, District Judge.

These cases were consolidated for trial before the Court without a jury by agreement of the parties.

The contentions of the parties, as disclosed by their pleadings, are set forth generally in earlier rulings of the Court announced in connection with motions of defendant James O. Smith for summary judgment (Doc. 49) and will not be repeated here.

The main issues submitted for determination are:

(1) Was defendant Hicks, the driver of a truck hauling a load of pipe for defendant Steel Haulers, Inc., and insured by defendant Transit Casualty Co., guilty of any negligence which proximately caused the collision between the truck left standing on a turnpike bridge by Hicks without flares or warning devices, and the Ford automobile driven by plaintiff Burgen in which the deceased, Paul O. Jacobs, was riding?

(2) Was plaintiff Burgen or deceased Paul O. Jacobs guilty of any contributory negligence under the circumstances?

(3) There is raised as a subsidiary issue, the contention of defendant Hicks, that plaintiff Burgen was guilty of contributory negligence which must be imputed to the deceased Jacobs because Jacobs owned the vehicle in which he was riding and had the right and authority to exercise control over it and to direct its operation at all times pertinent.

(4) Is defendant Hicks entitled to recover against plaintiff Burgen for damages to his truck produced by the collision?

(5) Is defendant Hicks, as third party plaintiff, entitled to recover for any damages to his truck from third party defendant Judith K. Jackson Steeves, and to be indemnified for any amount he may be required to pay plaintiffs?

(6) The amount of damages, if any, to which respective plaintiffs are entitled to recover.

## NEGLIGENCE AND PROXIMATE CAUSE

This Court has little difficulty in finding that defendant Hicks was guilty of negligence which proximately caused the collision and produced the injuries of plaintiff Burgen and the death of Jacobs. The Kansas Supreme Court has on several occasions held that a person traveling on a highway has a right to assume there are no hidden, undisclosed defects; that the purpose of highways is for passage, travel, traffic, transportation, and they are not maintained for the purpose of providing storage for automobiles. Furthermore, it is essential under Kansas law, that an automobile or truck display a red light at the rear thereof, which is visible at night, and its purpose is to provide a danger signal to overtaking traffic, and a warning by proper lights is more necessary when the automobile is at rest than when it is in motion. Drake v. Moore, 184 Kan. 309, 315, 336 P.2d 807.

Defendant Hicks advances the contention that his truck was literally overloaded with lights and reflectors and that the addition of flares could scarcely have provided more warning. Hicks overlooks the fact that the lights remaining illuminated on his truck were for the most part on the front end of the machine. He had been driving for considerable time through rain and later a drizzle. His truck had not been recently washed and it is reasonable to assume that, as Burgen testified, no lights appeared on the truck. It may be inferred that the reflectors and the small lights on the rear of the truck, which Hicks insists remained intact, were obscured by the accumulation of dirt, mud and crud a vehicle naturally picks up when traveling through a drizzle as was the situation here. Though Hicks contends that many lights were burning on the front end and around the cab of his truck, these presumably were obscured by the heavy load of pipe and the tarp by which the load was covered, since the lights were not visible to one approaching from the rear.

The truck had just been struck in the rear by the Steeves vehicle. The impact was sufficient to wreck the Steeves vehicle and Hicks filed a third party complaint against Mrs. Steeves and Burgen claiming damages against them in the amount of $4,500.00. The impact between the truck and the Steeves Renault was presumably quite severe.

The contention of Hicks is that he was excused from putting out flares because his first obligation under the law was to render aid and assistance to the persons in the Steeves automobile.

The most stringent rule with which Hicks was required to comply was ICC Rule 192.50, which directs that after an accident he must (a) stop immediately, (b) take all necessary precaution to prevent further accidents at the scene, and (c) render all reasonable assistance to injured persons. . . .

At the time of the collision between the truck and the Renault, Hicks did not know that anyone in the Renault car had been injured so that the provisions of K.S.A. 8–518(a) would not be brought into play. The collision between the truck and the Renault occurred near the east end of a bridge which was 2,315 feet long, a little less than half a mile. Hicks stopped his truck on the bridge about 450 feet from the west end of it. That Hicks did not stop immediately is evident. He went almost a city block beyond the Smith car before stopping. He was familiar with the turnpike and could have driven a short distance further to the west and off the bridge and off of the roadway and onto the shoulder, had he cared to do so, and thus avoided parking his truck on the bridge with its disabled lighting equipment. Hicks failed to comply with his duty and obligation to set out the flares and fusees, which he admits were in his truck, and his failure to do so constituted a neglect on his part to perform the duty imposed upon him by law specifically designed to avoid and prevent the fatal accident which thereafter occurred. Hicks was guilty of negligence and his negligence proximately caused the death of Jacobs and the injury and damage to Burgen. Drennon v. Pennsylvania Casualty Co., 162 Kan. 286, 288, 176 P.2d 522.

## CONTRIBUTORY NEGLIGENCE

■■ There does not seem to be any serious contention that decedent Jacobs was guilty of contributory negligence. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. To bar a person from recovery, it must appear that his failure to exercise reasonable care for his own protection was a legally contributing cause to his injury. His failure to exercise reasonable care for his own protection is not a legally contributing cause of his injury unless such conduct was a substantial factor in bringing about his injury. Farmer v. Central Mutual Ins. Co., 145 Kan. 951, 955, 67 P.2d 511. Jacobs was a passenger in the car. When he was confronted with the sudden danger presented by the truck standing on the bridge in front of him, he exclaimed, "watch it." There is nothing in the case from which it might be inferred that he had time or opportunity to do anything more. Defendant Hicks contends that plaintiff Burgen was guilty of contributory negligence because he failed to see the parked truck on the bridge; because he failed to keep the vehicle he was driving under control; because he was driving too fast under the circumstances; and because he did not proceed on the south lane of the west-bound trafficway. The evidence indicates that though Burgen had been driving some 60 mph before going onto the bridge, he slowed the Ford car he was driving to 50 mph as he came on the bridge, traveled on the south lane of the westbound roadway, passed the Renault, then the Smith station wagon, and then observed ahead of him a man, standing in the passing (south) lane of the westbound roadway, waving his arms and a flashlight. He saw no other lights to the north of the man and started to pull to his right and into the north lane of traffic to avoid hitting the man with the flashlight. Then, for the first time, he saw a big object in front of him and observed another auto just south of the truck. He started to put on his brakes and observed that the surface of the bridge was slippery. He started to pull back to the south, or passing lane, to avoid hitting the truck but did not have time to make it and the left front end of the Ford car hit the left rear side of the truck.

■■ Plaintiff Burgen had a right to assume that there would be no undisclosed defects such as a truck parked on a bridge without required flares.

When Burgen was confronted with the dangerous situation that appeared before him requiring a speedy decision, and it appeared at first that a man was in the south lane of traffic ahead of him, he turned to the north lane to avoid hitting the man, then looming in front of him was the parked truck. At the same time, he also saw another vehicle to the south of the truck. He applied the brakes hard but observed the slippery surface of the bridge, and though he pulled back toward the south lane to avoid the truck, he didn't have time and the Ford struck the truck. He looked around him and discovered his father-in-law was dead. He got out of the Ford and observed a car going on west from the scene of the accident. His head and right knee had been injured and he had chest pains. With the realization that his father-in-law was dead, in a moment of remorsefulness, he did state that it was all his fault, that he didn't know what he would tell his mother-in-law. This statement cannot be held to overcome the established facts and the reasonable inferences that may be drawn from them.

I must conclude that plaintiff Burgen was not guilty of contributory negligence that precludes his right to recover damages suffered because of the serious negligence of defendant Hicks in stopping his truck on a bridge after dark without complying with the mandatory provisions of the law requiring the placing of flares as a warning to other travelers on a high speed turnpike. Drake v. Moore, 184 Kan. 309, 313, 314, 336 P.2d 807.

### IMPUTED NEGLIGENCE

I have determined that neither Burgen nor his passenger Jacobs were guilty of contributory negligence, so the matter of imputed negligence requires no determination. However, under the undisputed evidence in this case, I could not find that Burgen was acting as the agent of Jacobs, nor from the facts were they engaged in a joint enterprise. There was no sharing of expenses, no business venture, nothing more than a pleasure trip. There was no pecuniary interest involved, and the parties were engaged in nothing other than a social excursion. Under Kansas law, absent a mutual business interest, as here, the elements required to establish a joint enterprise are not present in this case. Bedenbender v. Walls, 177 Kan. 531, 535, 280 P.2d 630; Angell v. Hester, 186 Kan. 43, 46, 348 P.2d 1050; In re Estate of Dikeman, 178 Kan. 188, 199, 284 P.2d 622. Restatement, Torts 2d, § 491(e) "Automobile Trips."

### HICKS IS NOT ENTITLED TO RECOVER

It follows that the claim of Hicks against Burgen and against Judith Steeves must be denied. Burgen was guilty of no negligence which fell below the standard to which he was required to conform for his own protection and which was a legally contributing cause, cooperating with the negligence of Hicks. The conduct of Burgen was equal to that to which a reasonable man should conform in order to protect himself from harm. Guerra v. Jaeger, 204 Kan. 309, 461 P.2d 737. The intervening negligence of Hicks excuses third party defendant Steeves from indemnity to Hicks. There was no evidence sufficient to support a finding of negligence against Steeves.

In addition to the foregoing general findings of fact, the Court makes the following specific and additional

### FINDINGS OF FACT

1. Plaintiff and Third Party Defendant, Nelson L. Burgen, is a citizen of the State of Kansas.

2. Plaintiff, Erma Jacobs, is the surviving spouse of Paul O. Jacobs, deceased, and brings the action for the benefit of herself and the surviving next of kin of Paul O. Jacobs, deceased, in accordance with the laws of the State of Kansas.

3. The defendant, counter-claimant and cross-claimant, Sophus Hicks, is a citizen of the State of Missouri.

4. The defendant, counter-claimant and cross-claimant, Steel Haulers, Inc., is a Missouri corporation with its principal place of business at Kansas City, Missouri.

5. The defendant, counter-claimant and cross-claimant, Transit Casualty Co., is an insurance corporation with its principal place of business in the State of Missouri.

6. The third party defendant, Judith K. Steeves, formerly known as Judith K. Jackson, is now a citizen of the State of California.

7. These actions are between citizens of different states; the Court has jurisdiction because of diversity of citizenship and the amount involved, which amount is in excess of $10,000.00, exclusive of interest and costs, in each case.

8. The cases have been consolidated for trial to the Court, without a jury, by agreement of the parties.

9. No administration has been held on the estate of Paul O. Jacobs, deceased, and none is necessary.

10. Paul O. Jacobs died intestate.

11. Paul O. Jacobs was instantly killed in a collision between a vehicle driven by Nelson L. Burgen and a vehicle driven by Sophus Hicks. At the time of his death, Paul O. Jacobs was a white male, age fifty-three (53), in good health, and was employed by the Kansas Power and Light Company as a fireman, where he earned an average wage of slightly less than $1,000.00 per month. He had been employed by the Kansas Power and Light Company for 17 years prior to his death.

12. The average life expectancy of a white male, age 53, is 20.6 years.

13. Paul and Erma Jacobs were married on October 6, 1935, and to that marriage 5 children were born, whose names and present ages are as follows:

| | |
|---|---|
| Patricia Callaway | Age 33 |
| Charolette Burgen | Age 30 |
| Carol Grimm | Age 28 |
| Robert Jacobs | Age 23 |
| Paul David Jacobs | Age 21 |

14. The marriage of Paul and Erma Jacobs was congenial and happy. Paul Jacobs was a good provider and as a result of his death Erma Jacobs has sustained damages for mental anguish, extreme mental suffering, bereavement, loss of society, loss of companionship, loss of comfort, loss of protection, loss of attention, advice and counsel, as well as funeral expense in the sum of $1,043.90.

15. At all times when the defendant, Steel Haulers, Inc., is named, it includes its filed insurance carrier Transit Casualty Co., a corporation, because at the time of the collision that is the subject of this controversy the truck was being operated pursuant to its Kansas Corporation Commission and Interstate Commerce Commission authority under the coverage of a policy of insurance issued by Transit Casualty Co., a corporation.

16. The collision between the vehicle driven by the plaintiff, Nelson Burgen, and the Steel Haulers, Inc. truck occurred about 8:30 o'clock P.M., on Wednesday, February 1, 1967, on the westbound bridge crossing the Kansas River on the Kansas Turnpike near Lawrence, Kansas.

17. At the time of the collision it was dark, misting rain, and while the mist was not freezing on the Turnpike generally, it was on the surface of the bridge at or near the scene of the accident.

18. At about 8:20 P.M. on February 1, 1967, a Ford station wagon operated by James O. Smith and proceeding in an easterly direction came on the bridge for westbound traffic, crossing the Kansas River on the Kansas Turnpike near Lawrence, Kansas. Smith skidded on the ice, lost control, collided with the south railing of the bridge. He came to a stop facing in a northerly direction, at a point about 659 feet from the west end of the bridge. The station wagon was stopped in such a manner as to block the north lane of westbound traffic. The south lane for westbound traffic remained clear and unobstructed. Smith turned on the inside dome light on his station wagon

and left to report this accident. He went westward to the Turnpike entrance of the West Lawrence exit.

19. As he was leaving on foot, Smith observed a highway maintenance truck which was spreading salt on the bridge. This truck passed him and threw salt on his legs. A number of other vehicles also went by his disabled vehicle including two transfer trucks and a lady and a child. The salt truck passed shortly after he got out of the station wagon.

20. Shortly thereafter and at about 8:25 P.M., the truck owned by defendant Steel Haulers, Inc., and driven by defendant, Sophus Hicks, approached from the east going west in the north lane or driving lane for westbound traffic. Hicks saw, in his low-beam lights, the stalled Smith station wagon; saw that it was in a disabled condition in the north lane; and he placed into operation his four-way flasher lights. These lights consisted of flashing yellow lights mounted on the side of the hood in front, and two flashing red lights in the rear.

21. At the same time a 1966 Renault, driven by the third party defendant, Judith K. Jackson Steeves, attempted to pass the Hicks truck as it was traveling westward on the bridge. This attempt to pass occurred at a point east of the wrecked Smith vehicle. The Renault was traveling in the passing or south lane of westbound traffic. The Renault skidded on the ice, went out of control, and skidded into and under the left rear portion of the Hicks truck.

22. Following the collision with the Hicks truck, the Steeves Renault skidded to a stop on the bridge in the north lane of traffic facing generally northwest. It came to a stop east of the Smith station wagon, at a point approximately 868 feet from the west end of the bridge. The Steeves Renault was blocking the north lane of the westbound traffic, but the south lane remained clear and unobstructed. This car was badly damaged by reason of its impact with the rear end of the Hicks truck. The point of impact with the Hicks truck was approximately 36 feet east from the point the Renault came to rest. The Renault came to rest with its lights on.

23. The Steel Haulers, Inc. truck, following the collision with the Renault, drove on to the west, around the disabled Smith station wagon and parked in the north lane of traffic on the bridge, headed west, at a point about 408 feet west of the Renault.

24. At the point where the Hicks truck stopped, the bridge is 29 feet wide and is divided into two driving lanes for westbound traffic. The bridge is 2,315 feet long.

25. The Hicks truck was 7 feet, 8 inches wide at its widest point, and 30 feet long. It had 10 wheels, and it was loaded with conduit pipe, the pipe being covered tightly and securely with a tarpaulin.

26. Defendant Sophus Hicks, the driver of the Steel Haulers, Inc. truck, then got out of his truck and trotted some 408 feet back to the east, around the stalled station wagon, to the wrecked Renault and talked to the occupants of the Renault. During this time he did not place flares or fusees out in the vicinity of his truck, although they were available in the cab of the truck. It took Hicks from three to five minutes to go back to the Renault vehicle and thereafter return to his truck where he attempted to get flares and fusees out of the cab through the right-hand door which he found to be locked.

27. Sophus Hicks knew his truck was parked in a dangerous location obstructing one lane of traffic on a two-lane bridge.

28. The headlight and the yellow flashers on the front end of the Hicks truck, which was headed in a westerly direction, were on and operating. Reflectors and undamaged dimension lights on the truck were not discernible to a driver approaching from the east.

29. Sophus Hicks then went back around to the driver's side of the truck and got in the cab, still intending to get his flares and fusees, and at this time

saw a car approaching from the east headed west. He then got out of the truck and went to a point in the south lane of traffic near the east end of his truck, the rear of the truck, and commenced waving his arms and a flashlight at the oncoming car. At this time the truck still occupied the north lane and Hicks occupied the north edge of the south lane of the two-lane roadway. Flares or fusees had never been activated or placed.

30. The westbound car, approaching from the east was a Ford automobile driven by the plaintiff Nelson Burgen, which was also occupied by Paul O. Jacobs, who owned the car, but was riding as a passenger.

31. Prior to this time, Nelson Burgen and Paul O. Jacobs had been to the Boat Show in Kansas City, Missouri, for a pleasure trip. They were not on a joint venture, nor was Nelson Burgen acting as the agent of Paul O. Jacobs.

32. Nelson Burgen, prior to entering the Kaw River Bridge, had been traveling west about 60 miles per hour. It was misting rain, but he had not encountered any ice on the Turnpike or its bridges. Visibility was good and there was no evidence of any accumulation of ice on the windshields of any of the vehicles.

33. After the station wagon accident and before Nelson Burgen arrived at the Kaw River Bridge, the bridge surface had been salted by a State Highway maintenance truck.

34. Nelson Burgen saw the disabled Renault automobile as he approached the same, and the disabled station wagon, which was unlighted except for an inside dome light, and reduced his speed somewhat and went around these vehicles safely.

35. The collision between the Burgen vehicle and the Hicks truck occurred about 8:30 P.M., February 1, 1967.

36. As a result of this latter collision, Paul O. Jacobs was instantly killed and Nelson Burgen suffered head cuts, a cut on his hand, bruised ribs and a fractured patella.

37. Burgen approached the bridge, it was misting rain and he was using his windshield wipers. His lights were on low beam. He was driving in the southerly lane, or passing lane of the westbound traffic, because it was smoother and provided an easier ride. He did not turn on high beams because he felt it was unnecessary.

38. Upon passing the disabled Smith station wagon which was located 189 feet east of the Hicks truck, Burgen looked in his rear view mirror. The passenger, Paul O. Jacobs, yelled "watch it."

39. Two or three days prior to the day of the accident, Nelson Burgen and Paul O. Jacobs had talked of going to Kansas City, Missouri, on February 1, 1967 to attend a boat show.

40. The gas for the trip was purchased by the owner of the vehicle, Paul O. Jacobs, and he requested his son-in-law, Nelson Burgen, to drive the car. Nelson Burgen was familiar with the route and vicinity of Kansas City, and the decedent, Paul O. Jacobs, was not.

41. From the time of leaving Topeka until the accident, Nelson Burgen retained possession of the keys to the car.

42. Upon entering the east edge of the bridge, Nelson Burgen saw the disabled Steeves Renault and the disabled Smith station wagon and said to his father-in-law, "shall we stop?" He testified that if his father-in-law had said to stop he would have stopped.

43. Nelson Burgen was treated by a hospital in Lawrence, Kansas, and was released. He was subsequently treated by Dr. Joseph Gendel of Topeka, Kansas. Dr. Gendel treated him for a hairline fracture to the right knee. Plaintiff Burgen made no complaint to Dr. Gendel relative to the laceration to his head, left hand or ribs. Dr. Gendel treated no other area except the right knee. Burgen sustained damages for medical bills in the total sum of $220.00 and he sustained some loss of time. Dr. Gendel testified he would expect the injury to the right knee to heal with no functional disability. His other injuries

have healed with no resultant difficulty. He was a white male, 30 years of age at the time of the accident.

44. As a result of said accident, the defendant and cross-claimant and counter-claimant, Sophus Hicks, sustained damage to his truck in the amount of $200.00; loss of time and down time for 27 days at $17.00 per day, medical bills, and various and sundry miscellaneous expense, including cut tires, damage to lights, and tarpaulin, all in the additional sum of $318.81.

45. Immediately following the collision Burgen stated to the witness, James Smith, "It's all my fault, it's all my fault, I do not know what I am going to tell my mother-in-law."

46. Sophus Hicks is not entitled to recover against Nelson Burgen and Judith K. Steeves, jointly and severally, in the aforegoing amount.

47. The accident involving Nelson Burgen and Paul O. Jacobs would not have occurred had the Steel Haulers, Inc. truck been properly marked with flares or fusees and had it been properly distinguishable on the bridge where it was parked.

48. Sophus Hicks could have driven off of the west end of the bridge and then parked completely off of the traveled roadway.

49. Defendant, James O. Smith, was discharged by the Court's Order for Summary Judgment entered February 5, 1970.

50. Judith K. Steeves was traveling at a speed between 40 mph and 50 mph when she was in the process of passing the truck and she was completely unaware of the disabled Smith vehicle or any road condition that would cause her driving difficulty.

51. Judith K. Steeves was not negligent in attempting to pass the truck by traveling between 40 mph and 50 mph.

52. Judith K. Steeves was never aware of any dangerous condition or situation as she was in the process of passing the truck prior to the collision with the truck.

53. Judith K. Steeves was not the primary, active or proximate cause of the collision between the Jacobs car and the truck.

54. The collision between Judith K. Steeves and the Hicks truck was an accident without negligence on the part of either party.

From the foregoing Findings of Fact, the Court concludes that:

## CONCLUSIONS OF LAW

1. Sophus Hicks, the agent and driver for Steel Haulers, Inc., was guilty of negligence in parking on the bridge and in failing to put out flares or fusees to mark his parked truck at the time when he first parked the truck, and such negligence was a proximate cause of the collision with the car driven by Nelson Burgen and occupied by Paul O. Jacobs.

2. Neither Nelson Burgen nor Paul O. Jacobs were guilty of contributory negligence.

3. Nelson Burgen and Paul O. Jacobs were not on a joint enterprise.

4. As the result of the collision, Paul O. Jacobs was killed and plaintiff Erma Jacobs, for the benefit of herself and the surviving next of kin of Paul O. Jacobs, deceased, has been damaged and is entitled to recover from Sophus Hicks, Steel Haulers, Inc., and Transit Casualty Co., the sum of $25,000.00, plus the funeral bill in the sum of $1,043.90, plus the costs of this action.

5. As the result of the collision, Nelson Burgen was injured, sustained pain, suffering, medical expense, lost time and permanent injury in the sum of $3,000.00, and is entitled to judgment against Sophus Hicks, Steel Haulers, Inc., and Transit Casualty Co., in such sum, together with the costs of this action.

6. The third party claims of Steel Haulers, Inc., should be denied.