LYDIA E. BURKS, *Appellee,* v. THE ATCHISON, TOPEKA
& SANTA FE RAILWAY COMPANY, *Appellant.*

No. 16,658.

### SYLLABUS BY THE COURT.

RAILROADS—*Injury to Employee—Contributory Negligence—Condition of Defendant's Track—Special Findings.* In an action for the death of a freight conductor, through being caught and crushed between two cars during switching operations, *held:*

(*a*) Evidence that as a coupling was about to be made he was seen to try to raise a lever which operated the automatic device, and then to step upon the track, and that after the accident the apparatus was found to be out of order, was sufficient to prevent the fact of his going between the cars from being deemed contributory negligence as a matter of law.

(*b*) Evidence that close by his feet, near the middle of the track, there was found a lump of coal about the size of a man's head, bearing indications of having been stepped on, and that a mark near it showed where some one's foot had slipped, justified an inference that he had fallen over it and that his death was occasioned thereby.

(*c*) Evidence that the lump of coal appeared to have been exposed to the weather for some time, that other smaller lumps had been permitted to lie upon the track indefinitely, and that weeds and grass were growing between the rails to the height of four to seven inches, warranted a finding of actionable negligence on the part of the company in respect to the condition of the track.

(*d*) A finding that there was no evidence that the conductor was familiar with the condition of the track is to be interpreted as meaning that under all the evidence the jury were not satisfied that such was the case.

Appeal from Neosho district court. Opinion filed July 9, 1910. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*H. P. Farrelly, T. R. Evans, W. R. Cline,* and *J. Q. Stratton,* for the appellee.

Burks v. Railway Co.

The opinion of the court was delivered by

MASON, J.: W. A. Burks was killed while in the service of the Atchison, Topeka & Santa Fe Railway Company as a freight conductor. His widow sued the company, alleging his death to have been due to its negligence. From a judgment for the plaintiff the defendant appeals. It contends that there was no evidence of actionable negligence on its part, but that, even if there was, the defense of contributory negligence was conclusively established.

There was testimony tending to show these facts, among others: A part of Burks's train, in order to pick up a car, was backed into a spur track at Caney, upon which switching was done every day—usually twice a day. The cars were equipped with coupling apparatus intended to operate automatically, including a lever by which to open the knuckles prior to contact, without going between the rails. If the lever failed to work the custom was to walk in and open the knuckles by hand. An eye witness thought Burks tried to raise the lever as the train approached the car. Then he stepped between the cars and was caught as they came together, his death resulting almost instantly. Close to his feet there was found, near the middle of the track, a lump of coal, or of rock resembling coal, about the size of a man's head. It was imbedded in the soil to the depth of about an inch, and seemed to have been lying for some time exposed to the weather, having a white formation on its surface, and to have been recently disturbed by something striking it. It had the appearance of having been scratched, as though some one had stepped on it —it showed that a foot had slipped on it. Near it— within half an inch—there was a mark showing that some one had slipped. The track at this place had not been well kept up, but had been neglected. The section

10—83 KAN.

men had not done much to it. Grass and weeds grew between the rails to the height of about four to seven inches—high enough to cover the rails. They had not been mowed recently. Considerable coal, some of it in lumps the size of a man's fist, had at different times been scattered along and upon the track and permitted to remain until some one came along and picked it up, sometimes two or three days. The section men were not seen to remove any of it. After the accident the coupler was found not to be in perfect working order, but in such condition as in a degree to prevent its manipulation by the side rods. A pin which required raising to allow the knuckle to open was bent and did not work readily.

The plaintiff does not claim that the defendant was negligent in allowing the coupling apparatus to be out of order, for if there was a defect before the accident it was not shown to have been brought to the attention of the company, or to have existed long enough so that by the exercise of due diligence it should have been discovered. But the evidence that Burks was seen to try to raise the lever and then step between the rails, in connection with the circumstance that the coupler was afterward found to be out of condition, justified an inference that he went between the cars because the automatic coupling device failed to work, and therefore was not necessarily wanting in due care. Of course the pin may have been bent by the collision, but the plaintiff was not required to prove the contrary. Contributory negligence being an affirmative defense, the burden of proving which rests on the defendant, the court can not treat it as conclusively established so long as the evidence is open to any other reasonable view.

The evidence bearing upon the cause of the accident was meager. Its substance has already been stated. The jury were justified in believing that Burks, who was said to have been an unusually careful and prudent

Burks v. Railway Co.

man, would not have been caught and crushed between the cars except for the intervention of some unusual agency.   The lump of coal lying near his feet, bearing indications of having been stepped upon, together with the mark in the soil showing where a foot had slipped, gave room for a reasonable inference, in the absence of any more probable solution of the problem, that he had stumbled upon and fallen over it.

A more difficult question is whether the evidence warranted a finding that the company was negligent in respect to the condition of the track.   There was nothing to show that this particular lump of coal had ever before been seen there.   The testimony as to its weathered condition possibly authorized a deduction that it had been lying on the ground for some time.   At all events there was an abundant showing that pieces of coal of a smaller size were habitually permitted to remain between the rails indefinitely, among grass and weeds that would necessarily hide them to some extent. The company must be deemed to have had knowledge of the continuous existence of the vegetation and the frequent presence of lumps of coal.   Whether the condition of the track showed a want of due care, and whether it occasioned the death of Burks, were questions for the consideration of the jury.   In the defendant's brief it is said:

"A little-used sidetrack at a small station presents a radically different situation from that of tracks in large railroad yards where many employees are constantly passing to and fro, and where, no doubt, there is at least a custom, if not a legal duty, to provide for inspection of the tracks."

What precautions are necessary, in order that it may be said that ordinary diligence has been shown in the inspection and care of the surface of a railroad track, doubtless depends to some extent upon the frequency of its use. (*Williams v. The St. L. & S. F. R'y Co.*, 119 Mo. 316, 322.) But just where the line should be drawn

is a question of fact for the determination of the jury, rather than of law to be settled by the court.

Complaint is made of the refusal of the trial court to require more definite replies to questions which were thus answered:

"Ques. How often had he [Burks] switched cars off and on this spur track? Ans. No evidence that he ever had.

"Q. Was he familiar at the time of his death with the construction of the track and how and in what manner it was used by the defendant? A. No evidence that he was."

Giving these answers was equivalent to stating that under all the evidence the jury were not satisfied that Burks had personally conducted any switching operations on the spur track, or that he knew its condition. A brakeman testified that Burks was familiar with the spur track—that he was nearly always out there when they were doing switching. But the same witness also said that he did not remember seeing Burks around it. The station agent was unable to say positively that Burks ever directed any switching there. The answers were therefore sufficiently specific and had some support in the evidence.

The judgment is affirmed.