No. 41,557

LUCILLE HOFF, *Appellant*, v. BERRY JOHNSTON, *Appellee*.

(349 P. 2d 873)

Opinion filed March 5, 1960.

*George B. Powers* and *Robert L. Howard,* both of Wichita, argued the cause, and *Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Anthony T. Dealy, Gerald Sawatzky* and *Donald L. Cordes,* all of Wichita, were with them on the briefs for the appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson,* and *Hugo T. Wedell,* of Counsel, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: In the district court, Mrs. Hoff sued Johnston for damages alleging that he negligently knocked her down and injured her with an automobile as she was crossing a street in Wichita. At the trial of the action the court sustained Johnston's demurrer to Mrs. Hoff's evidence on the theory that the evidence showed that she had been contributorily negligent at the time of the accident. She appeals from the order on the demurrer.

The accident occurred near the intersection of Hillside and

Lincoln streets during the evening of July 5, 1956, shortly after 8:00 o'clock. It was raining and it seems to have been almost dark. Hillside is a north and south street and Lincoln runs east and west. It is shown that there is a four-way stop at the intersection. Mrs. Hoff was a passenger on a bus coming east on Lincoln and got off the bus when it stopped at the curb on the southwest corner of the intersection. The evidence shows that when it rained, water collected at the southwest corner to form quite a large pool and there is no sidewalk on that corner; also that there were guy wires and a stop sign at the corner, all of which impeded a pedestrian from crossing the street with the bus parked at the curb at the intersection. It was also undisputed that there were no marked crosswalks at this intersection.

Mrs. Hoff seems to have known the physical conditions existing at the southwest corner where the bus stopped. She testified she alighted from the bus from the rear door, and intended to go across Lincoln northward to a drugstore and there telephone her husband to come for her in their automobile. She further testified that she started to cross the street by going around the back of the bus. She stopped at the corner of the bus, noticed a car which had stopped some few feet back, looked both ways and saw no other cars going either east or west. She looked east beyond Hillside and saw no cars moving west at that intersection. She then hurried along to cross the street, but hesitated at the center to look again for cars. She was wearing a light nylon dress with a white background and no rain coat. The witness further testified she thought she was practically at the curb—almost to the driveway leading to the drugstore—when she was hit by defendant Johnston's car. She never saw the car nor heard it until it hit her.

Another witness for plaintiff was Earl Brooks, the man who had stopped his car behind the parked bus and who had allowed Mrs. Hoff to cross in front of his car. He testified that he observed Mrs. Hoff cross behind the bus, pause at the corner of the bus to look for traffic; she then proceeded in front of his car to the center of the street, where she hesitated and looked both ways. She then took three or four steps and began to angle to the left, the west, to go into the driveway leading to the drugstore. The witness testified that all at once the defendant's car struck her— struck her with the right fender.

The witness had testified that he noticed the plaintiff because she had on a white dress and the rain drops seemed to make it glisten. She was easy to see because of her dress. "She was skipping along like a woman will skip in the rain." Brooks testified that after the accident, he got out of his car and went across to the plaintiff to help her; that one of her feet was in the water running in the gutter and he moved it out of the water; that the water was running in a stream about thirty inches wide. The witness further testified that he saw no traffic on the street going either way when he stopped to let the plaintiff go in front of him by the bus. He testified concerning plaintiff crossing the street as related above but was not questioned as to when he first saw defendant's car, if at all, before defendant hit plaintiff.

Another physical fact of the scene of the accident which is not in dispute is that Lincoln street is forty feet wide.

Defendant Johnston was called as a witness by the plaintiff. He testified that he was twenty years old at the time of the accident; that he was driving his brother's 1955 Ford, a fairly late model in July, 1956. He was driving west on Lincoln and stopped at the stop sign at the Hillside-Lincoln intersection. He said he knew now that it was 93 feet from the stop sign to the driveway into the drugstore on Lincoln. The car he was driving had a "straight shift," meaning not an automatic shift. He started across Hillside in first gear, accelerated some and thinks he was going between five and ten miles an hour as he crossed the street through the inter-section. He got up more speed as he proceeded west. He seemed to admit his windshield wipers were not working from lack of vacuum as he accelerated to the west. He did not see plaintiff until she "ran" in front of his car some five feet in front of him.

"Q. When you saw her what did you do then? A. Well, I put on my brakes and tried to *swerve to the right*." (Italics supplied)

The witness further testified that he did not know how fast he was going when he hit the lady. He was accelerating his car; his lights were on and there were no obstacles in the street to prevent him from seeing the woman as he came west on Lincoln, and he could see through the windshield whether the wipers were working or not.

We believe that the above account gives a fair résumé of the testimony which was held insufficient as against defendant's de-murrer to the evidence.

Defendant in his brief quite correctly points to the rule to be observed in testing a plaintiff's evidence against a demurrer thereto by citing *Drake v. Moore*, 184 Kan. 309, 336 P. 2d 807, and liberally quoting the opinion of that case beginning at page 313. For the moment at least, we shall quote only the first two paragraphs of the syllabus in the Drake case:

"1. In testing the sufficiency of evidence as against a demurrer, the evidence and the inferences that may be properly drawn therefrom must be considered in the light most favorable to the party against whom the demurrer is directed; and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of fair and impartial judgment, may reach different conclusions thereon, the demurrer should be overruled and the issue submitted to a jury.

"2. Contributory negligence is generally an affirmative defense. It is never presumed. It must be established by proof."

The defendant then relies upon such cases as *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158; and *Lilly v. Wichita Railroad & Light Co.*, 127 Kan. 527, 274 Pac. 205, to uphold the order of the trial court in sustaining the demurrer to the evidence in this case. Do those cases support the ruling?

In the Goodloe case, the plaintiff from all of his evidence walked into the side of a pickup truck when there was nothing to prevent him from seeing the truck. There was no question about the position of the truck.

In the Lilly case, the plaintiff walked in front of an on-coming street car which was lighted and ringing its bell. Witnesses testified as to the position of the car.

The trouble with trying to apply the Goodloe and Lilly cases to the situation now before the court is that nowhere in the evidence is there any testimony showing where defendant's car was at the time plaintiff looked for traffic going either way when she was at the corner of the bus, or where it was when she looked from the center of the street. The defendant testified he did not see plaintiff in her white, glistening dress until she "ran" in front of his car only five feet away. Then he says he turned to the right, which would tend to chase the plaintiff down, since plaintiff was proceeding in a northerly direction and defendant was driving west. It is to be noticed that the testimony of this hostile witness is at variance with that of plaintiff and the witness Brooks. Plaintiff felt she had almost reached the north side of the street and was just about to go into the driveway leading to the drugstore when

she was hit without seeing defendant's car. Brooks testified that after plaintiff had crossed part of the far half of the street, she angled to the left—that is to the west—to go into the driveway.

In *Drake v. Moore*, supra, part of the opinion describing how plaintiff's evidence is to be treated when attacked by a demurrer reads as follows:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any differences between the direct and cross-examination; and if so considered, there is any evidence which sustains plaintiff's case on any theory, the demurrer should be overruled (citing cases)."

Furthermore, if a general knowledge of automobiles be applied to defendant's testimony, it might be considered damaging to his contentions. He thinks he was going only five to ten miles an hour in first gear while crossing Hillside, but admits he was accelerating thereafter. He would certainly have shifted his "straight" transmission to second by this time, and if his windshield wipers were not working, he might have been accelerating at a rapid rate indeed. We do not know whether defendant was driving a V-8 car or merely a six cylinder car, but in either case he was in second gear—which amounts to practically a passing gear up to a certain speed—the car could have been shooting ahead at rapidly increasing speed. The distance from the west edge of Hillside to the east edge of the driveway into the drugstore appears to have been 45 feet, if we read plaintiff's exhibit 1 correctly. Defendant would travel this distance very quickly under the conditions indicated.

It will be remembered that witness Brooks said that defendant hit plaintiff with his right front fender. He also testified that she "lit up on top of the right front fender and rolled over on the pavement." This may account for defendant's statement that plaintiff was still in front of his car when he stopped.

Defendant cites G. S. 1949, 8-557, which statute governs the right of pedestrians to cross streets and highways where there are no crosswalks. We feel that the statute lends little support to defendant's contentions for there is no clear evidence showing that plaintiff might have seen defendant's car approaching until she was well into the north half of the street, or even further across

the street. What was she to do at that time but to hurry along? We direct attention to *Barker v. Seber*, 154 Kan. 24, at page 29, 114 P. 2d 791, and also to the cases of *Walker, Administratrix v. Gerritzen*, 179 Kan. 400, 295 P. 2d 635; *Hultberg v. Phillippi*, 167 Kan. 521, 206 P. 2d 1057; on second appeal, 169 Kan. 610, 220 P. 2d 208.

The chief error in defendant's argument, in our opinion, is that he would have the court presume that when plaintiff was at a point of safety she could have observed the defendant's car approaching and yielded the right of way. It might also be observed that under the most favorable view of the evidence there is an indication that plaintiff was hit from the rear. But defendant has invoked a presumption of contributory negligence directly contrary to the rule enunciated in the second paragraph of the syllabus in *Drake v. Moore*, supra.

The rule that contributory negligence is an affirmative defense which must be pleaded and proved by the defendant is well established in this jurisdiction, and it is only when plaintiff's evidence clearly establishes his own negligence that the evidence becomes demurrable. In absence of such a condition, the defendant has the burden of proof on this issue. This rule is announced in many of our former decisions, see: *Union Pac. Ry. Co. v. Hand*, 7 Kan. 380, 388; *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kan. 412, syl. ¶ 3, 11 Pac. 408; *City of Eskridge v. Lewis*, 51 Kan. 376, 378, 32 Pac. 1104; *Railway Co. v. Peck*, 79 Kan. 413, syl. ¶ 2, 100 Pac. 54; *Burks v. Railway Co.*, 83 Kan. 144, 146, 109 Pac. 1087; *Eidson v. Railway Co.*, 85 Kan. 329, 116 Pac. 485; *Altwein v. Street Railway Co.*, 86 Kan. 220, 120 Pac. 550; *Jenkins v. Kansas City Public Service Co.*, 127 Kan. 821, 822, 275 Pac. 136; *Riner v. Collins*, 132 Kan. 613, 296 Pac. 713; *Ray v. Allen*, 159 Kan. 167, syl. ¶ 1, 152 P. 2d 851; *Central Surety & Ins. Corporation v. Murphy*, 103 F. 2d 117.

In Clark on *Code Pleading*, 2nd Ed., 303, sec. 47, is to be found a full discussion of the question of pleading and proof as to contributory negligence. The eminent author comes to the conclusion that the Kansas rule is not only the majority rule but the best rule, although he points out that there are two other rules to be found in some of the states.

There can be no question that plaintiff's evidence was sufficient to go to the jury on the issue of defendant's own negligence. Defendant has made no contention to the contrary.

On the evidence introduced by plaintiff in this case, we think there was a clear question of fact for the jury as to whether plaintiff was contributorily negligent in any way. Therefore, the trial court erred in sustaining a demurrer to her evidence, and that order must be reversed with directions to grant plaintiff a new trial. It is so ordered.